**DEREK E. BROWN**
UTAH ATTORNEY GENERAL
Douglas J. Crapo (USB No. 14620)
crapo@agutah.gov
Deputy Attorney General
Stevenson Smith (USB No. 18546)
scsmith@agutah.gov
Kevin M. McLean (USB No. 16101)
kmclean@agutah.gov
Peishen Zhou (USB No. 18596)
peishenzhou@agutah.gov
Assistant Attorneys General
Utah Office of the Attorney General
160 East 300 South, 5th Floor
Salt Lake City, Utah 84114
(801) 366-0310 Phone

*Counsel for Plaintiffs*

*Additional Counsel on Signature Page*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **STATE OF UTAH** and **DIVISION OF CONSUMER PROTECTION** | **MOTION TO REMAND** |
| *Plaintiffs*, | **(REDACTED)** |
| v. | |
| **EXPRESS SCRIPTS, INC.; EXPRESS SCRIPTS ADMINISTRATORS, LLC; ESI MAIL PHARMACY SERVICE, INC; EXPRESS SCRIPTS PHARMACY, INC.; ESI MAIL ORDER PROCESSING, INC.; MEDCO HEALTH SOLUTIONS, INC.; UNITEDHEALTH GROUP, INC.; OPTUMRX INC.; OPTUMINSIGHT LIFE SCIENCES, INC.; and OPTUMINSIGHT, INC.** | **Case No. 2:25-cv-00088-DBB-DBP**<br><br>**District Judge David Barlow**<br><br>**Chief Magistrate Judge Dustin B. Pead** |
| *Defendants*. | |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 1

LEGAL STANDARDS ............................................................................................................... 2

ARGUMENT .............................................................................................................................. 3

   I.   Utah's Disclaimer Is Effective ........................................................................................ 3

   II.  Utah's Disclaimer Precludes Federal Officer Jurisdiction ................................................... 4

      A.  The Defendants Were Not "Acting Under" an "Officer of the United States" Given Utah's Disclaimer ..................................................................................................... 4

      B.  Utah's Claims Are Not Connected to or Associated with Defendants' Government-Directed Conduct ....................................................................................................... 11

         1. Defendants' purportedly "indivisible" conduct is not connected to Utah's claims. 13

         2. Utah's public nuisance claim is not connected to Defendants' federal conduct. ..... 16

      C.  Defendants Have No "Colorable Federal Defenses" For Their Conduct Giving Rise to This Suit ..................................................................................................................... 19

CONCLUSION ......................................................................................................................... 20

## INTRODUCTION

This action brought by the State of Utah and the Division of Consumer Protection (collectively, "Utah"), on behalf of the citizens of Utah and under Utah law, belongs in Utah state court. Express Scripts and OptumRx, seeking to avoid state court, removed the action to this Court by claiming federal officer jurisdiction under 28 U.S.C. § 1442(a)(1). Federal officer removal is not proper. Utah does not seek to hold Defendants liable for actions they performed at the direction of federal officers and does not seek relief based on Defendants' conduct regarding federal government healthcare plans. Utah moves to remand this action back to the District Court of the Third Judicial District in Summit County, Utah.

## BACKGROUND

On December 23, 2024, Utah filed its Complaint ("Compl.") in Utah District Court against Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, ESI Mail Pharmacy Service, Inc., ESI Mail Order Processing, Inc., Express Scripts Pharmacy, Inc., UnitedHealth Group, Inc., OptumRx, Inc., OptumInsight Life Sciences, Inc., and OptumInsight, Inc. (Dkt. 1-1) Utah alleges that Defendants knowingly engaged in unreasonable and unlawful conduct that substantially contributed to the opioid epidemic in Utah. This conduct included colluding with opioid manufacturers to increase sales by giving manufacturers' opioids preferred status on their formularies while refusing to place limits on their approval for use in exchange for rebate and fee payments. *See, e.g.* Compl. at ¶¶ 33, 395. It also consisted of assisting manufacturers in their misleading opioid marketing efforts and operating mail order pharmacies that dispensed opioids without adequate controls for prescriptions, including those written by high-volume prescribers, when Defendants possessed troves of data showing that the prescriptions were not being written for medically legitimate purposes. *See, e.g.,* Compl. at ¶¶ 10-11, 34 - 35, 41, 162, 392.

1

Utah alleges that it has suffered and continues to suffer a public health crisis of unprecedented dimensions because of Defendants' conduct. To hold Defendants accountable for their role in Utah's opioid crisis, Utah filed this lawsuit in state court, where it raised a public nuisance claim and a Utah Consumer Sales Practices Act claim. Utah made only state law claims and expressly disavowed any federal cause of action or claim against a person acting under office of the federal government. Utah does not challenge the U.S. Department of Defense's ("DoD") operation of its TRICARE healthcare program or the federal Office of Personnel Management's ("OPM") operation of the Federal Employee Health Benefits Act ("FEHBA") program. Nor does it challenge the U.S. Department of Veterans Affairs' ("VA") or the Veteran's Health Administration's ("VHA") operation of health plans for veterans. The Complaint does not reference or include any claims related to the TRICARE, FEHBA, or VHA programs or Defendants' conduct regarding these programs. Rather, the Complaint focuses on private market transactions for which ESI's and OptumRx's dominant positions enabled them to misrepresent and promote the unrestrained use of opioid prescriptions in Utah while concealing their corresponding harm. Compl. at ¶¶ 2, 27, 233-283. Utah has expressly disclaimed and disavowed claims regarding Defendants' conduct related to federal programs. Compl. at ¶¶ 44, 361-376.

Nevertheless, Defendants removed the case, alleging that Utah's claims are related to their conduct in administering TRICARE, FEHBA, and VHA health plans. Joint Notice of Removal, Dkt. 1 ("Notice"). This allegation is incorrect. Utah's case should be remanded.

## LEGAL STANDARDS

While the federal officer removal statute is "liberally construed," Defendants still bear the burden of establishing federal jurisdiction by a "preponderance of the evidence." *See Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1250–51 (10th Cir. 2022); *see also Wyoming v. Livingston*, 443 F.3d 1211, 1225 (10th Cir. 2006) ("Section 1442(a)(1)

requires a substantial factual showing to justify removal."). A private defendant seeking to invoke federal officer removal must meet a three-pronged test: (1) the party must show that it "acted under the direction of a federal officer," (2) the party must show that the claim "has a connection or association with government-directed conduct," and (3) the party must have "a colorable federal defense to the claim or claims." *Suncor Energy*, 25 F.4th at 1251.

## ARGUMENT

### I.    Utah's Disclaimer Is Effective

Utah's Complaint effectively disclaims any reliance on or relief related to Defendants' work with federal health benefit plans and thus negates Defendants' sole basis for removal. Every court to decide a motion to remand in similar opioids cases against these Defendants has granted remand where the plaintiff included a similar disclaimer. *See State of Arkansas, ex rel. Griffin v. Optum, Inc.*, No. 4:24-cv-00701 (E.D. Ark. Dec. 31, 2024) *appeal docketed,* No. 25-1165 (8th Cir. Jan. 31, 2025) (attached as Ex. A); *Nassau Cnty., N.Y. v. Mylan Pharms., Inc.*, No. 2:23-cv-5382, 2024 U.S. Dist. LEXIS 118154 (E.D.N.Y. July 4, 2024) *appeal docketed,* No. 24-1639 (2nd Cir. June 21, 2024); *Westchester Cnty. v. Mylan Pharms., Inc.*, 737 F.Supp. 3d 214 (S.D.N.Y. 2024) *appeal docketed,* No. 24-1639 (2nd Cir. June 21, 2024); *People of the State of California v. Express Scripts, Inc.,* No. 2:23-cv-08570, 2024 U.S. Dist. LEXIS 34507 (C.D. Cal. Feb. 28, 2024) *appeal docketed,* No. 24-1972 (9th Cir. April 2, 2024).

Utah's disclaimer expressly disclaims any reliance on or connection to Defendants' work with federal health benefit plans. The disclaimer is clear and unequivocal, stating, for example: "[t]his lawsuit relates to the Defendants' conduct in the non-federal market which resulted in the increased use, abuse, and diversion of opioids" and "[t]he allegations in this Complaint do not include and specifically exclude Defendants' provision of PBM or mail order pharmacy services under contracts with the [DOD], the [OPM], the [VA], the [VHA], or any other federal agency"

3

and "[t]he Plaintiffs do not seek declaratory relief, injunctive relief, abatement relief, damages, civil penalties, or any other relief for the conduct of any PBM Defendant related to the provision of any service under contracts with the [DOD], the [OPM], the [VA], the [VHA], or any other federal agency." Compl. at ¶¶ 44, 361, 367. The disclaimer could not be more explicit. It completely excludes federal work from Utah's litigation. *See People of the State of California,* 2024 U.S. Dist. LEXIS 34507 at *14 (holding that a substantially similar disclaimer was "explicit" and that "an explicit disclaimer is sufficient to 'eviscerate' Defendants' grounds for removal").

## II.    Utah's Disclaimer Precludes Federal Officer Jurisdiction

Defendants cannot meet their burden of establishing a basis for federal officer jurisdiction under section 1442(a)(1). First, in light of Utah's disclaimer, Defendants cannot establish that their conduct at issue was carried out "acting under" an "officer of the United States." Second, because of the disclaimer, Defendants have no plausible argument that Utah's claims "relate to" or are "causally connected" to their federal work. Finally, for much the same reasons, Defendants have no "colorable federal defenses" to Utah's claims. Defendants' failure to meet any of these elements negates any purported basis for federal officer jurisdiction and requires remand.

### A. The Defendants Were Not "Acting Under" an "Officer of the United States" Given Utah's Disclaimer

To demonstrate that it was "acting under" a federal officer, a private entity must show that the government acted as its "federal superior," which typically involves "subjection, guidance, or control" exercised by the government over the private entity. *Suncor Energy*, 25 F.4th at 1251. Further, the actions of a private entity claiming that it is acting under a federal officer "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id*. The private entity must act under the federal superior's "*strict guidance or control.*" *Id*. at 1253.

No such relationship is involved in this case. Utah's claims relate ***exclusively*** to

Defendants' work in the non-federal market, and Utah expressly **_disclaims_** any reliance upon Defendants' federal work. "The fact that a private company acts under the direction of a federal officer at some point in its business with respect to federal health benefits programs does not bring all of the company's actions under the umbrella of federal officer authority." *State of Arkansas,* at 4 (Ex. A). It can hardly be said that Defendants' work with non-federal health benefit plans constitutes an effort to assist or to help carry out the duties of a federal officer; nor is their non-federal work in any way subject to a federal officer's "extensive direction and control." Neither the DOD, which is over TRICARE, nor the OPM, which is responsible for FEHBA health plans, nor the VHA, which is responsible for various Veterans Administration health plans, directs or controls Defendants' conduct in their management of non-federal health plans. *See St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*, 990 F.3d 447, 455 (5th Cir. 2021) (recognizing that a valid waiver of claims related to an entity's administration of federal health plans may leave "little room to contend that [the administrator] 'acts under'" the direction of a federal officer for its "non-federal" work).

Defendants attempt to blur the lines of Utah's disclaimer by arguing that the work they perform for federal and non-federal plans is "undifferentiated." To be clear, this argument relates only to Express Scripts' claims that it conducted "rebate negotiations for its entire commercial book of business, including both FEHBA and non-FEHBA plans" and "none of the discounts or rebates that . . . [it] negotiated were exclusive to FEHBA plans" (Notice at ¶¶ 34–56, 67) and to OptumRx's similar claims that it "conducted rebate negotiations across its books of business that included federal and non-federal plans" and "none of the discounts or rebates that [it] negotiated were exclusive to VHA plans." Notice at ¶ 63 fn. 2, ¶ 67.

However, as stated in the Complaint, no federal officer or federal agency directed Express

Scripts to conduct simultaneous rebate negotiations for non-federal plans and FEHBA plans. Compl. ¶ 368. Express Scripts unilaterally decided to negotiate rebates for non-federal programs and federal programs collectively for its own purposes. Doing so does not cloak all of its non-federal work under the federal officer umbrella. No federal agency directs that Express Scripts' rebate negotiations applicable to FEHBA plans must be applied to non-FEHBA plans, and no federal agency directs that the terms applicable to FEHBA plans must be applied to non-FEHBA plans. *Id.* Indeed, Congress has not authorized OPM to act on matters unrelated to federal employees. *See* 5 U.S.C. §§ 1103 (OPM duties) & 8902(g) (FEHBA coverage). Similarly, the FEHBA Standard Contract for FEHBA plans by its own terms only governs the conduct of PBMs with respect to FEHBA plans and does not govern non-FEHBA plan conduct. *See* Notice at Exhibit E, Dkt. 1-5 (Federal Health Employees Health Benefits Program Standard Contract for Experience-Rated Health Maintenance (2019)).

Furthermore, OPM does not provide any specific direction to PBMs on the details of how rebate negotiations with drug manufacturers are to be conducted or what rebate contracts with manufacturers must include for FEHBA plans. *See* Ex. B, Expert Report of Richard Frank at ¶¶ 23-28; FEHBA Program Carrier Letter;[1] Notice at Exhibit E, Dkt. 1-5. FEHBA Carrier Letters make clear that OPM does not contract with PBMs. Ex. B at ¶ 24; Notice at ¶ 31. Instead, PBMs contract with FEHBA Carriers. *Id.* FEHBA Carriers are private health insurance companies that contract with OPM to provide health insurance to government employees. OPM does not require FEHBA Carriers to hire PBMs to manage their pharmacy benefits. Ex. B at ¶ 25.

---

[1] Express Scripts provides the following web address for the 2019 Carrier Letter: https://www.opm.gov/healthcare-insurance/carriers/fehb/2019/2019-10; Links to additional Carrier Letters are included at p. 12-13 of the 2019 Carrier Letter; *See also* 2010-04 FEHB Program Carrier Letter attached as Ex. C.

Critically, OPM regulations and guidance related to FEHBA plans do not direct, control, or place limits on how PBMs negotiate with manufacturers for rebates, on their rebate contracts, on how they design their formularies, or on what utilization management provisions they require. Ex. B at ¶¶ 26 - 28; Ex. C (FEHBA Program Carrier Letter 2010-04); Notice at Exhibit E, Dkt. 1-5 at pp. I-17 - I-22 (FEHBA Standard Contract). In fact, OPM places no specific constraints on the provisions of PBMs' rebate agreements with manufacturers, including the rebate rates, the formulary placement required to receive a rebate, or other rebate requirements. Ex. B at ¶¶ 26 - 28; FEHBA Program Carrier Letters;[2] Notice at Exhibit E, Dkt. 1-5 at pp. I-17-I-22 (FEHBA Standard Contract). OPM only requires its Carriers to ensure that PBMs adhere to certain general transparency standards, including transparently disclosing and passing through rebates and other fees from manufacturers to the FEHBA health benefit plans. Ex. B at ¶¶ 27 – 28; Ex. C (2010-04 FEHBA Program Carrier Letter); Notice at Exhibit E, Dkt. 1-5 at p. I-17-I-22 (FEHBA Standard Contract). But OPM places these standards only on FEHBA plans, not the non-federal plans that are the subject of this Complaint, and the standards relate to PBMs' relationship with FEHBA health benefit plans, not PBMs' relationship with manufacturers or pharmacies. *Id.* These standards are not sufficient to create federal officer jurisdiction. *See Doe v. Integris Health, Inc.*, 123 F.4th 1189, 1195-1196 (10th Cir. 2024) (holding that requirement that defendant certify its compliance with Centers for Medicare and Medicaid services Meaningful Use Program and the federal government's provision of a guidance document were not sufficient to show defendant "acted under" a federal officer.).

The fact that the federal government does not control or dictate whether or how Express Scripts negotiates rebates is fatal to Express Scripts' argument that its allegedly "indivisible"

---

[2] *Supra* n1.

FEHBA rebate negotiations negate Utah's disclaimer and create federal officer jurisdiction. For federal officer jurisdiction to exist, the defendant must show that the government exerts "strict guidance and control" over the conduct at issue. In *Suncor Energy*, the 10th Circuit held that Exxon did not act under a federal officer because the government did not provide specific direction regarding the conduct at issue. The court noted, "'the government does not control the manner in which [Exxon] drill[s] for oil and gas, or develop[s] and produce[s] the product' nor has Exxon 'shown that a federal officer instructed [it] how much fossil fuel to sell.'" *Suncor Energy*, 25 F.4th at 1253. Because there was "no allegation that the government ever actually directed Exxon's drilling activity or rates of production," defendant did not establish that it acted under a federal officer. *Id.* at 1254. Likewise, Express Scripts has not established that the federal government actually directed its FEHBA rebate negotiations or formulary designs.

Similarly, neither the DOD nor the VHA directs Defendants' rebate negotiations for non-federal plans. With regard to TRICARE, the DOD does not direct or control Express Scripts' rebate negotiations or rebate contracts for non-federal plans, and Express Scripts has not attempted to argue otherwise. Express Scripts does not design formularies, negotiate rebates, or enter into rebate contracts with drug manufacturers on behalf of TRICARE. *See* Notice at ¶¶ 23-25; Ex. B at ¶¶ 13-18. Express Scripts' non-federal rebate negotiations and formulary development are not intertwined with its work on behalf of TRICARE. Ex. B at ¶¶13-18. It has admitted that the federal government does not require it to conduct rebate negotiations simultaneously for TRICARE and non-TRICARE health benefits, and that the federal government does not require it to apply TRICARE terms to its non-TRICARE health plans. Ex. B at ¶ 18; Ex. D[3]. Further, the terms of

---

[3] Defendant Express Scripts, Inc.'s Supplemental Objections and Responses to Plaintiff State of Hawaii's Combined Requests for Admissions, Interrogatories, and Requests for Production of Documents Regarding Federal Officer Removal Jurisdiction, Dated May 14, 2024.

Express Scripts' TRICARE mail order pharmacy contract do not impose requirements on Express Scripts' non-federal mail order operations. Ex. B at ¶¶ 19-22; Notice at Exhibit D, Dkt. 1-4; *See also* 2002 TRICARE Contract (ESI_MDL_001130156), attached as Ex. E.

OptumRx also alleges that it "negotiated rebates across its books of business that included both federal and non-federal plans alike" and that "none of the discounts or rebates that OptumRx negotiated were exclusive to VHA plans." Notice at fn. 2, ¶ 67. But OptumRx, by its own admission, does not develop formularies for VHA plans. Earlier in the Joint Notice of Removal it states that "[t]he VHA has its own Pharmacy & Therapeutics Committee (P&T Committee) and has complete control over and constructs its own formulary. OptumRx does not decide what prescription drugs are covered or not covered on the VHA's formulary, nor does OptumRx make recommendations regarding formulary design." Notice at ¶ 42. The rebate negotiations with opioid manufacturers at issue in Utah's Complaint are negotiations for the placement of opioids on a formulary with no restrictions for use in exchange for rebates. *See e.g.* Compl. ¶¶ 12, 33, 244, 248, 266. OptumRx does not engage in these negotiations for the VHA, which constructs its own formulary, decides which drugs are included, and makes its own decisions regarding formulary design. Notice at ¶ 42; Ex. B at 30-35. As such, rebate negotiations OptumRx allegedly engages in for the VHA, if any, are not related to the allegations in Utah's Complaint and OptumRx does not act under a federal officer when engaging in the non-federal rebate negotiations at issue in this case.

To the extent OptumRx does engage in *relevant* rebate negotiations simultaneously for federal and non-federal plans, no federal officer has directed it to do so. Compl. ¶ 376; Ex. B at 30-35. In addition, OptumRx has not demonstrated that a federal officer has directed it to apply the requirements of the VHA contract or the terms of any VHA rebate negotiations to its non-

federal plans. *Id.* While OptumRx claims that the VHA "dictates nearly every aspect of its relationship with OptumRx" (Notice at ¶ 41) it does not claim that the VHA directs its negotiations with opioid manufacturers, or that the VHA imposed requirements on its contracts with non-federal clients or its rebate negotiations on their behalf.

Further, OptumRx did not attach its contract with the VHA to the Notice of Removal, did not cite to any regulations requiring it to engage in rebate negotiations for the VHA or for non-federal plans or governing such negotiations and, while it vaguely mentions providing services for "other federal plans," (Notice at ¶ 49), it fails to identify any other federal agency to whom it provides services. OptumRx has not met its burden of demonstrating that it acted as a federal officer with regard to the allegations in Utah's Complaint. *See Suncor Energy*, 25 F.4th at 1250 (stating defendants "bear the burden of establishing jurisdiction by a preponderance of the evidence"); *See also Zerkowski v. Patrick*, 2023 U.S. Dist. LEXIS 222658, at *8 (E.D. Ky. Dec. 14, 2023) (holding that defendant that did not provide a contract or agreement between it and the VA, among other deficiencies, did not meet its burden to demonstrate it was acting under a federal officer).

It is also fatal to Defendants' removal argument that they were never *required* to engage in "simultaneous" and "undifferentiated" rebate negotiations and PBM services with federal and non-federal plans. In *Doe v. Integris Health,* the 10th Circuit held that Integris was not "acting under" a federal officer when the company attached a tracking technology to the electronic health records it provided to federal and non-federal patients. *Integris Health*, 123 F.4th at 1195. The court explained that, "[e]ven if providing EHR access were a government task, Integris has not shown that tracking technology is part of that government task." *Id.* Similarly here, even if Defendants' rebate negotiations and PBM services for *federal* health plans were a government task, Defendants

10

have not shown that their decision to duplicate those negotiations and services with *private* plans was part of that task. The fact that simultaneous negotiations and services for private plans were "not required" by the federal government "is fatal" to Defendants' removal argument. *See id.*

In opioid and non-opioid cases against PBM defendants across the country, the majority of federal district courts have rejected the arguments that Defendants attempt to make here, concluding that the PBMs' choice to conduct negotiations for federal and non-federal clients at the same time does not create federal officer jurisdiction over Defendants' non-federal conduct. *See, e.g.*, *State of Arkansas,* at 4-8 (Ex. A); *West Virginia ex rel. McCuskey v. Eli Lilly & Co.,* 2024 U.S. Dist. LEXIS 160669, at *6-25 (N.D. W.Va. Sept. 6, 2024); *Nassau Cnty.,* 2024 U.S. Dist. LEXIS 118154 at *16-17 (referencing the *Westchester County* decision); *Westchester Cnty.,* 737 F.Supp. 3d at 226-227; *Ohio ex rel. Yost v. Ascent Health Servs. LLC*, 2024 U.S. Dist. LEXIS 358, at *7-8 (S.D. Ohio Jan. 2, 2024). As one court explained,

> The fact that Caremark made the business decision to 'conduct rebate negotiations simultaneously on behalf of a large number of clients, including FEHBA plans' does not constitute the type 'of help or assistance necessary to bring a private [entity] within the scope of the [federal officer removal] statute.' Caremark provides no evidence that OPM required Caremark to conduct its rebate negotiations simultaneously. Caremark cannot claim they are acting at the direction of a federal officer with respect to non-FEHBA plans which are the only plans at issue here.

*McCuskey*, 2024 U.S. Dist. LEXIS 160669, at *21. The same is true here.

Defendants cannot satisfy the "acting under" requirement for removal. The Court should remand this case.

**B.  Utah's Claims Are Not Connected to or Associated with Defendants' Government-Directed Conduct**

For much the same reason, Defendants also cannot establish that their actions under a federal officer "relate to" or are "causally connected" to Utah's claims against them. Here, there is

a distinction between Defendants' work on behalf of federal and non-federal health benefit plans due to the disclaimer. Defendants' argument that the Complaint implicates their rebate negotiations for federal plans is simply wrong. The disclaimer is explicit – Utah's claims concern only Defendants' non-federal work, and the claims are not related to or causally connected to Defendants' work pursuant to federal contracts.

This can be clearly seen in contrast with the decision in *California v. CaremarkPCS Health LLC*, 2024 WL 3770326 (9th Cir. Aug. 13, 2024) (Mem. Op.), on which Defendants rely. In that case, the plaintiff sued PBMs for rebate practices that allegedly inflated the price of insulin in California. The plaintiff's complaint attempted to disclaim challenges to and recovery from certain conduct undertaken by the PBM defendants in connection with two federal healthcare programs. However, that disclaimer "fail[ed] to *explicitly* release claims or possible recovery from rebate practices as they relate to [those federal programs]." *Id.* at *1. Because of this shortcoming, the PBM's rebate negotiations related to those federal programs remained "causally connected to the dispute." *Id.*

By contrast, Utah's Complaint presents just such a "more carefully drafted disclaimer." The disclaimer expressly excludes from Utah's claims all the Defendants' conduct on behalf of federal healthcare programs; it likewise expressly disclaims any potential recovery or other form of relief for Defendants' federal conduct. *See* Compl. at ¶¶ 44, 361-376. It severs any possible connection between Defendants' federal work and this litigation.

Nevertheless, Defendants maintain that Utah's claims still relate to their government-directed conduct because Utah's disclaimer is "illusory and ineffective." Defendants argue the disclaimer is ineffective because (1) some of Defendants' conduct for federal plans was "indivisible" from the non-federal conduct at issue in the Complaint and (2) Utah's public nuisance

claim requires inclusion of harms caused by Defendants' conduct for federal plans. Both arguments fail.

          1.   *Defendants' purportedly "indivisible" conduct is not connected to Utah's claims.*

Defendants argue that Utah's disclaimer is "illusory and ineffective" because some of Defendants' alleged conduct for non-federal health plans was indivisible from Defendants' work on behalf of the federal government. Notice at ¶¶ 62-63. According to Defendants, Utah's claims necessarily implicate Defendants' federal work because "many benefits and PBM services they develop and offer to FEHBA and VHA plans are the same ones they offer to non-federal plans." *Id.* at ¶ 59. That argument falls flat.

This case is not about Defendants' general administration of health plans (federal or non-federal). It is about Defendants' collusion with opioid manufacturers to increase the sale of opioids by, among other things, giving opioids preferred status on national formularies, removing limits on the approval of their use, assisting with misleading marketing efforts, and ignoring the growing evidence of opioid misuse, addiction, and diversion despite Defendants' detailed claims data tracking the opioid epidemic. "[N]o federal officer directed, supervised, or controlled Defendants' actions with respect to the alleged scheme to oversupply opioids. So none of the alleged conduct is related to acts Defendants performed under federal authority." *State of Arkansas,* at 4 (Ex. A); *see also Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 233–34 (4th Cir. 2022) (holding that government-directed production and sale of fossil fuels did not justify removal because the "source of tort liability" stemmed primarily from defendants' "concealment and misrepresentation of [their] products' known dangers—and the simultaneous promotion of their unrestrained use").

Indeed, the ***only*** detailed example of "indivisible" conduct Defendants raise in their Notice

concerns their voluntary decision to negotiate rebates simultaneously for federal and non-federal plans. Defendants do not claim that any of the acts Utah complains of (collusion, concealment, misrepresentation, and promotion of unrestrained opioid use) were "indivisible" between federal and non-federal clients; nor do Defendants claim the federal government directed those acts. *See Anne Arundel Cnty., Maryland v. BP P.L.C.*, 94 F.4th 343, 348 (4th Cir. 2024) (clarifying that "[i]t is the 'act' for which the defendant is being sued—not the plaintiff's entire civil action in a general sense—that must relate to the asserted federal duty."). To the contrary, Defendants themselves allege that their formulary and utilization management services—acts at the center of the Complaint—vary for each individual client. *See* Notice at ¶ 11 ("[T]he plan sponsor controls the formulary, utilization management, and clinical programs applicable to each plan it sponsors."). Thus, under Defendants' own theory of the case, Utah's central claims cannot be connected to Defendants' federally controlled or directed conduct.

Defendants' heavy reliance on *Puerto Rico v. Express Scripts, Inc.*, 119 F.4ᵗʰ 174 (1ˢᵗ Cir. 2024) is misplaced. In *Puerto Rico*, a PBM defendant (Caremark) argued that because it jointly negotiated rebates for insulin on behalf of all clients, its federal and non-federal conduct was indivisible as it related to the plaintiff's claim that Caremark engaged in a scheme to inflate the price of insulin through its rebate negotiations. *Id.* The Court, relying on the *Jefferson County v. Acker* case, stated that it had to "credit Caremark's theory of the case" and denied the plaintiff's motion to remand.[4] 119 F.4ᵗʰ at 189 (citing *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999)). In *Acker*, the Supreme Court explained that a removing party must make an "adequate threshold showing" of a basis for removal. *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999)). The Tenth

---

[4] The *Puerto Rico* court also found that the plaintiff's disclaimer, which was much less robust than Utah's disclaimer here, was "artful pleading." *Id.* at 181-182, 191.

Circuit describes this as a "substantial factual showing." *Wyoming*, 443 F.3d at 1225. Here, unlike in *Puerto Rico*, the Defendants' theories are contradicted by the facts presented herein and in the Complaint. *See, e.g.*, Ex. B; Compl. ¶¶ 368-376. Defendants have not made an adequate threshold showing of a basis for removal, and this Court is not required to "credit" their disproven or inapplicable theories.

Regardless, the holding in *Puerto Rico* does not apply. In *Puerto Rico*, Caremark argued that its federal and non-federal rebate negotiations were "indivisible" because the plaintiff was alleging that *all aspects* of the PBMs' rebate negotiations caused the price of insulin to inflate. *See* Appellants' Br. *19, *Puerto Rico*, 2023 WL 7112746 ("Puerto Rico's Complaint, however, challenges *all* conduct related to Caremark's negotiation, execution, and representation of rebates."); Caremark Notice of Removal ¶ 37, *Gov't of Puerto Rico, v. Eli Lilly & Co.*, No. CV 23-1127 (JAG), 2023 WL 4830569 (D.P.R. July 13, 2023) ("Puerto Rico's claims in this case fundamentally challenge whether PBMs are permitted to negotiate for or obtain Manufacturer Payments."). Here, Utah is not alleging that Defendants' rebate negotiations, as a whole or in principle, caused the oversupply of opioids. Instead, the aspects of the rebate negotiations that Utah challenges concern Defendants' decisions to give opioids preferred status on national formularies, with little to no restrictions, despite Defendants' knowledge of their oversupply and harm. *That* aspect of the "rebate negotiation" is certainly not something the federal government directed, nor do Defendants try to argue otherwise. *This* "alleged scheme is not indivisible conduct." *State of Arkansas,* Ex. A at 6-8 (distinguishing *Puerto Rico* and holding that, despite Defendant's argument to the contrary, Defendants' conduct was not indivisible, and the plaintiff's disclaimer of claims or relief related to Defendants' services to the federal government made

questions about the scope of Defendants' federal authority irrelevant).[5]

     2. *Utah's public nuisance claim is not connected to Defendants' federal conduct.*

     Next, Defendants argue that Utah's disclaimer is ineffective because Utah's nuisance claim relates to Defendants' federal conduct. Defendants argue that the oversupply of opioids causing the alleged nuisance necessarily includes opioids dispensed to members of federal health plans. Notice at ¶ 56. This is incorrect. The "oversupply" of opioids Utah alleges in the Complaint was created ***only*** by the PBMs' non-federal transactions. Compl. at ¶ 44 ("This lawsuit relates to the Defendants' conduct in the non-federal market which resulted in the increased use, abuse, and diversion of opioids."). Express Scripts and OptumRx manage rebates and pharmacy claims on a plan-by-plan basis. Notice at ¶¶ 9-10; Ex. B at ¶¶ 5, 36-46. This means that Defendants can identify and separate prescriptions they processed or dispensed for FEHBA plans, TRICARE plans, and VHA plans from prescriptions processed or dispensed for other, non-federal plans, including plans in the State of Utah. Compl. at ¶¶ 368-370; Ex. B at ¶¶ 5, 36-46. Utah's oversupply allegations thus do not include the federal prescriptions, nor do they depend on Defendants' federal conduct.

     Defendants' claims data and data fields bear this out. ████████████████
████████████████████████████████████████████████████████

---

[5] Defendants also cite to *Hawaii ex rel. Lopez v. CaremarkPCS Health L.L.C.*, No. 23-00464, 2024 U.S. Dist. LEXIS 79854 (D. Hawaii May 1, 2024), in support of their indivisibility arguments. However, that case also concerned the insulin pricing scheme and is likewise inapplicable. Moreover, the plaintiff's disclaimer in *Hawaii* simply stated that it was "not seeking relief relating to any federal program (*e.g.,* Medicaid, Medicare, TRICARE, FEHBA) or any contract related to a federal program." *Hawaii*, 2024 U.S. Dist. LEXIS at \*33. The court found the disclaimer insufficient in relation to Caremark's claim that its non-federal and FEHBA rebate negotiations were indivisible but acknowledged that additional facts could result in the case being remanded. *Id.* at \*33-34. Here, Utah's disclaimer is substantial and sufficient, as are the facts discussed above demonstrating that the federal government does not direct, control, or place limits on PBMs' non-federal rebate negotiations. Thus, the *Hawaii* court's holding with regard to Caremark is not applicable here.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████ Ex. B at ¶¶ 37–38; Ex. F (Express Scripts data fields). OptumRx's data fields provide similar information. Ex. B at ¶ 44; Ex. G (OptumRx data fields). As such, the volume of opioid prescriptions processed or dispensed by Express Scripts and OptumRx for federal plans can be easily separated from the non-federal prescriptions in assessing the nuisance created by Defendants' non-federal conduct. Defendants will not have to "prove federal direction in state court" as they assert. Notice at ¶ 72.

Utah can prove its claims against Defendants without any discussion or evidence concerning their roles in federal healthcare programs. Utah can prove 1) that the opioid epidemic in Utah is a substantial and unreasonable interference with public rights that constitutes a public nuisance, and 2) that the Defendants' unlawful or unreasonable conduct in the non-federal market was a substantial contributing factor in creating, causing, and perpetuating that nuisance. Restatement (Second) of Torts § 821B. Thus, Defendants' only conduct at issue is their work in the "non-federal market." Whether Defendants' federal conduct also contributed to the public nuisance is irrelevant to the claims Utah has pled. In light of Utah's disclaimer, such conduct is akin to the actions of a non-party to the litigation that may also have contributed to the nuisance.

Defendants next assert that Utah's disclaimer "is ineffective because it inherently contradicts the elements of Utah's public nuisance claim" because Utah must show interference with "rights common to the general public" and Utah cannot exclude members of the public from the scope of its claim or relief. Notice at ¶ 68. This misstates Utah law. Under Utah public nuisance

law, "[i]t is not . . . necessary that the entire community be affected by a public nuisance, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right." *Erickson v. Sorensen*, 877 P.2d 144, n. 5 (Utah Ct. App. 1994) (citing Prosser and Keeton on the Law of Torts, §90, at 643 (5th ed. 1984)). Thus, the very premise of Defendants' argument is flawed.

Defendants also argue that because the relief Utah seeks is for the "entire opioid epidemic," which "includes alleged harms caused by prescriptions dispensed" to members of federal plans, Utah's claims are related or causally connected to Defendants' federal conduct, despite the disclaimer. Notice at ¶ 70. But, as discussed above, evidence of the volume of opioid prescriptions Defendants dispensed or processed for non-federal plans can be determined by the Defendants' data. In other opioid cases, proof of harm and the scope of relief has been based on the volume of prescriptions each defendant is responsible for, not by tracking each individual prescription to the harm it caused. *See, e.g. In re Opioid Litig.,* No. 400000/2017, NYSCEF Doc. No. 9199, Jury Verdict and Allocation (March 22, 2022) (attached as Ex. H). Here, the fact finder can similarly determine the extent to which each Defendant contributed to the public nuisance by analyzing the Defendants' non-federal conduct and non-federal prescriptions.

The cases Defendants cite in support of their arguments are inapposite. They cite to two opioid-related public nuisance cases against PBMs where courts found that the plaintiffs' claims were related to Defendants' conduct in carrying out federal contracts. Notice at ¶¶ 3, 20, 27, 28, 29, 48, 57, 58, 71, 74 (citing *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006 (N.D. Ohio Jan. 12, 2023), *Cnty. Bd. of Arlington Cnty. v. Express Scripts,* 966 F.3d 243 (4th Cir. 2021)). However, Defendants fail to mention that in both of those cases the plaintiffs did not disclaim claims or recovery related to Defendants' conduct in carrying out federal contracts. *See In re Nat'l*

*Prescription Opiate Litig.*, 2023 WL 166006 at *5-6; *Cnty. Bd. of Arlington Cnty.,* 966 F.3d at 249-250, 256; *see also People of the State of California*, 2023 WL 4269750, at 5 n.4 (rejecting defendants' argument regarding *County Board of Arlington County* stating, "that decision is distinguishable, at least in part, because it did not involve an express disclaimer, such as Plaintiff's here"). Neither case is instructive here.[6]

Because Defendants have failed to satisfy the "related to" prong, there is no federal officer jurisdiction and remand is proper.

## C. Defendants Have No "Colorable Federal Defenses" For Their Conduct Giving Rise to This Suit

Finally, Utah's disclaimer negates the last element of the test for federal officer removal jurisdiction: the presence of "colorable federal defenses." To support removal under section 1442(a)(1), Defendants need not have meritorious federal defenses, merely colorable ones. *See Acker*, 527 U.S. at 431. But, in light of the disclaimer, Express Scripts and OptumRx have no such colorable defenses here.

Defendants have identified two purported federal defenses: the government contractor defense and federal preemption pursuant to preemption provisions applicable to TRICARE and FEHBA. Notice at ¶¶ 77-88. The problem for Defendants with each of these purported defenses is that, in the removal context, they apply only to the Defendants' actions in connection with their respective federal government healthcare programs. When a plaintiff renounces claims upon which federal officer removal was based, "a defendant is not entitled to a federal forum in which to raise a defense arising out of his official duties, because such a defense pertains to claims that simply do not exist." *State of Arkansas,* Ex. A at *6. Utah's disclaimer has taken Defendants' federal

---

[6] *Grider Drugs, LLC v. Express Scripts, Inc.*, 500 F. App'x 402 (6th Cir. 2012), cited by Defendants (Notice at ¶ 86), is not applicable either as it did not involve a disclaimer.

conduct out of this litigation.[7]  *See e.g. Batchelor v. Am. Optical Corp.*, 185 F.Supp.3d 1358, 1364-1365 (S.D. Fla. 2016) (finding that the defendant could not "assert a colorable federal defense based on government contractor immunity because such a defense 'pertains to claims that simply do not exist.'"); *Kelleher v. A.W. Chesterton Co.,* No. 15-cv-893, 2015 U.S. Dist. LEXIS 159783 at *11 (S.D. Ill. Nov. 23, 2015) ("Plaintiff's waiver has rendered any federal defenses moot. To deny remand of this case would affirm [defendant's] right to assert a defense against a claim that does not exist.").

## <u>CONCLUSION</u>

Utah has expressly disclaimed all claims related to Defendants' provision of services pursuant to contracts with the federal government. Removal pursuant to the federal officer removal statute was improper. Utah respectfully requests remand of this action to the District Court of the Third Judicial District in Summit County, Utah.

Dated: March 31, 2025                Respectfully Submitted

By: */s/ Elizabeth Smith*
Elizabeth Smith (*pro hac vice*)
esmith@motleyrice.com
Linda Singer (*pro hac vice*)
lsinger@motleyrice.com
MOTLEY RICE LLC
401 9th Street, Suite 630
Washington, DC 20004

**DEREK E. BROWN**
UTAH ATTORNEY GENERAL
Douglas J. Crapo (USB No. 14620)

---

[7] Furthermore, Express Scripts has not satisfied the pleading requirement to assert a colorable preemption defense to claims involving federal employees receiving health care via FEHBA plans. As discussed above, OPM regulations, Carrier Letters, and the Federal Employees Health Benefits Program Standard Contract do not address whether PBMs must negotiate rebates from manufacturers, the terms of such rebates, or the specifics of formulary design.  As such, Defendants cannot demonstrate that Utah's claims *conflict* with federal requirements as is required for federal preemption. *See Choate v. Champion Home Builders Co.*, 222 F.3d 788, 795 (10th Cir. 2000) (A state law is conflict preempted only to the extent it "actually conflicts with federal law.").

crapo@agutah.gov
Deputy Attorney General
Stevenson Smith (USB No. 18546)
scsmith@agutah.gov
Kevin M. McLean (USB No. 16101)
kmclean@agutah.gov
Peishen Zhou (USB No. 18596)
peishenzhou@agutah.gov
Assistant Attorneys General
Utah Office of the Attorney General
160 East 300 South, 5th Floor
Salt Lake City, Utah 84114

*Counsel for the Plaintiffs*