# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH
# CENTRAL DIVISION AT SALT LAKE CITY

| | |
|---|---|
| STATE OF UTAH and DIVISION OF CONSUMER PROTECTION,<br><br>  Plaintiffs,<br><br>  v.<br><br>EXPRESS SCRIPTS, INC., et al.,<br><br>  Defendants. | Case No. 2:25-cv-00088-DBB-DBP |

**DECLARATION OF ALLISON J. CAPLIS IN SUPPORT OF
<u>OPTUMRX, INC.'S MOTION TO DISQUALIFY MOTLEY RICE</u>**

## DECLARATION OF ALLISON J. CAPLIS

I, Allison J. Caplis, declare as follows:

1. I am over eighteen years old, of sound mind, and under no legal disability.

2. I am Counsel at Hogan Lovells US LLP, and I represented OptumRx, Inc. ("OptumRx") in responding to investigative subpoenas that the Attorneys General of the District of Columbia and Hawaii served on OptumRx.

3. I submit this declaration in support of OptumRx's Motion to Disqualify Motley Rice.

4. I have personal knowledge of the facts set forth in this declaration, and if called to testify in person about those facts, could competently do so under oath.

5. I participated in OptumRx's negotiation and response to the subpoenas that the District of Columbia and Hawaii served on OptumRx. Both subpoenas required that the requested documents be produced to Linda Singer at Motley Rice.

***OptumRx's Productions to the District of Columbia Attorney General***

6. On December 28, 2020 the District of Columbia Attorney General issued an investigative subpoena to OptumRx. That subpoena required OptumRx to produce documents directly to Linda Singer of Motley Rice LLC.

7. As part of the investigation, I participated in calls with the District of Columbia's Office of the Attorney General and with Motley Rice.

8. On behalf of OptumRx, I negotiated a confidentiality agreement and the subpoena's document requests with Paige Boggs of Motley Rice. The confidentiality agreement was executed by both Linda Singer and Paige Boggs of Motley Rice.

2

9. OptumRx raised concerns that Motley Rice attorneys could collect OptumRx's confidential information using governmental power and then turn around and use that same information in private litigation elsewhere against the company.

10. In response to those concerns, Motley Rice represented that there was a public client group at their firm that was walled off from the firm's private group, which was memorialized in the Confidentiality Agreement. Paragraph 4(i) of the Confidentiality Agreement permits disclosure of Confidential Information only to Motley Rice individuals "working on behalf of OAG in connection with the Investigation who agree to be bound by the terms of this Agreement by signing the Addendum." Paragraph 6 notes that with respect to the disclosures authorized by Paragraph 4(i), "the OAG and OAG outside counsel shall not share, disclose, or discuss Confidential Information with any Motley Rice LLC attorney, paralegal, contractor, or staff *who is not a member of the firm's Public Client practice group, and shall limit access to Confidential Information to members of that practice group*." (emphasis added).

11. Motley Rice also assured OptumRx that they would not use any of OptumRx's Confidential Information outside of the investigation. That assurance was memorialized in Paragraph 2 of the Confidentiality Agreement, whereby Motley Rice agreed "to use Confidential Information *solely in connection with the Investigation* and any litigation that may arise therefrom, *not to use Confidential Information in connection with any other matter*, and not to disclose any Confidential Information to any party or the public, except as provided by this Agreement provided that the OAG agree with the designation. *OAG outside counsel further agrees not to rely on Confidential Material in pursuing information or claims in any other matters outside of its representation of the OAG.*"

12. The District of Columbia subpoena did not mention opioids, and neither Motley Rice nor any other government lawyer from the District ever suggested that the investigation was regarding the marketing, sale, promotion, or distribution of opioids.

13. On July 13, 2021, OptumRx produced to Motley Rice a ranked list, by rebate value over time for prescriptions filled at pharmacies in the District of Columbia, of certain drug manufacturers that OptumRx contracts with. That list included manufacturers of opioid products.

14. On September 10, 2021, OptumRx produced to Motley Rice 68,310 pages of commercially sensitive information that were previously produced to the Minnesota Attorney General's Office. Those documents were branded with the same Bates-numbers as were provided to the Minnesota Attorney General's Office.

15. On November 24, 2021, OptumRx produced to Motley Rice commercially sensitive data, including certain of OptumRx's rebate-related data and consumer transaction level data.

16. That information is not available to the public and constitutes OptumRx's sensitive commercial material.

***OptumRx's Productions to the Hawaii Attorney General***

17. On October 15, 2021, the Hawaii Attorney General issued a Subpoena Duces Tecum to OptumRx. That subpoena required OptumRx to produce documents directly to Hawai'i Special Deputy Attorney General Linda Singer of Motley Rice LLC.

18. As part of the investigation, I participated in calls with the Hawaii Attorney General's Office and with Motley Rice.

19. On behalf of OptumRx, I negotiated a confidentiality agreement and the subpoena's document requests with Paige Boggs of Motley Rice. The confidentiality agreement was executed by both Linda Singer and Paige Boggs of Motley Rice.

20. The Hawaii subpoena did not mention opioids, and neither Motley Rice nor any other government lawyer from Hawaii ever suggested that the investigation was regarding the marketing, sale, promotion, or distribution of opioids.

21. OptumRx expressed concerns that Motley Rice might use the Confidential Information obtained in the investigation to pursue other cases against OptumRx. OptumRx entered into a Confidentiality Agreement with Hawaii. The Confidentiality Agreement with Hawaii included a provision, in Paragraph 2, whereby Motley Rice agreed "to use Confidential Information *solely in connection with the Investigation* and any litigation that may arise therefrom, *not to use Confidential Information in connection with any other matter*, and not to disclose any Confidential Information to any party or the public, except as provided by this Agreement, except as required by law or court order. *The State's outside counsel further agrees not to rely on Confidential Information in pursuing information or claims in any other matters outside of its representation of the State.*" (emphasis added). The Hawaii Confidentiality Agreement, Paragraph 4(i), permits disclosure of Confidential Information only to Motley Rice individuals "working on behalf of the State in connection with the Investigation who agree to be bound by the terms of this Agreement by signing the Addendum." And Paragraph 6 notes that with respect to the disclosures authorized by Paragraph 4(i), "the State and the State's outside counsel shall not share, disclose, or discuss Confidential Information with any Motley Rice LLC attorney, paralegal, contractor, or staff *who is not a member of the firm's Public Client practice group, and shall limit access to Confidential Information to members of that practice group*." (emphasis added).

22. On June 8, 2022, OptumRx produced to Motley Rice 68,310 pages of commercially sensitive information that were previously produced to the Minnesota Attorney General's Office.

5

Those documents were branded with the same Bates-numbers as were provided to the Minnesota Attorney General's Office.

23. On September 1, 2022, OptumRx produced to Motley Rice commercially sensitive data, including certain of OptumRx's rebate-related data and consumer transaction level data.

24. The vast majority of the documents that OptumRx produced to Motley Rice are not available to the public and constitute OptumRx's sensitive commercial documents.

### *OptumRx's Reliance on the Confidentiality Agreements*

25. With the assurances provided in the Confidentiality Agreements with Hawaii, the District of Columbia, and Motley Rice, OptumRx produced documents in response to the subpoenas. The documents and information that OptumRx produced includes information that is highly confidential and not otherwise available to the public. OptumRx designated those documents "CONFIDENTIAL" and produced them pursuant to the Confidentiality Agreements executed with Hawaii and the District of Columbia.

26. Those materials included documents and information about OptumRx's business operations. As described in the Declaration of Matthew P. Hooker in Support of OptumRx, Inc.'s Motion to Disqualify Motley Rice, the documents included materials related to formulary development, rebate negotiations with drug manufacturers, financial projections and strategies, and clinical and formulary offerings to clients. They also included charters, policies, and other materials from OptumRx's business strategy and formulary placement committees as well as emails from custodians relating to those and other aspects of OptumRx's business. The use of such documents against OptumRx in litigation unrelated to the District of Columbia and Hawaii's investigations, such as in the bellwether cases, is the exact situation my client was concerned about

and attempted to avoid through representations from Motley Rice and the executed confidentiality agreements.

27.     I understand that OptumRx does not routinely produce those types of documents and would not have produced those materials without first securing a protective order or entering into a confidentiality agreement.

[Signature page follows]

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: July 14, 2025.

_Allison J Caplis_
Allison J. Caplis

8