**DEREK E. BROWN**
UTAH ATTORNEY GENERAL
Douglas Crapo (14620)
Deputy Attorney General
Stevenson Smith (18546)
Peishen Zhou (18596)
Assistant Attorneys General
160 East 300 South, 5th Floor
PO Box 140872
Salt Lake City, Utah 84114-0872
(801) 366-0310
crapo@agutah.gov
scsmith@agutah.gov
peishenzhou@agutah.gov

(Additional counsel on signature page)

*Attorneys for Plaintiffs*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH
## CENTRAL DIVISION AT SALT LAKE CITY

| | |
|---|---|
| **STATE OF UTAH** and **DIVISION OF CONSUMER PROTECTION**, <br><br> Plaintiffs, <br><br> **v.** <br><br> **EXPRESS SCRIPTS, INC.**, and others, <br><br> Defendants. | **UTAH'S OPPOSITION TO OPTUMRX'S MOTION TO DISQUALIFY MOTLEY RICE LLC** <br><br> Case No. 2:25-cv-00088-JNP-DBP <br><br> District Judge Jill N. Parrish <br><br> Chief Magistrate Judge Dustin B. Pead |

<u>TABLE OF CONTENTS</u>

I.    Introduction ................................................................................................................. 1

II.   Background .................................................................................................................. 2

   A.    Overview ............................................................................................................. 2

   B.    The Opioids MDL ............................................................................................... 3

   C.    Motley Rice's representation of other governmental entities ............................ 3

      1.    The Chicago matter ..................................................................................... 3

      2.    The District of Columbia matter ................................................................. 4

      3.    The Hawaii matter ....................................................................................... 5

   D.    OptumRx's production of the documents at issue into the MDL Discovery
       Repository ............................................................................................................ 6

   E.    OptumRx's multiple unsuccessful efforts to disqualify Motley Rice ............... 7

III.  Legal Standard ............................................................................................................ 8

IV.   Argument ..................................................................................................................... 9

   A.    Utah Rule of Professional Conduct 1.11 reflects a balancing of interests ........ 9

   B.    OptumRx's motion to disqualify Motley Rice under Rule 1.11(c) should be denied.... 10

      1.    OptumRx cannot show that Motley Rice was a "public officer or employee" as
         required under Rule 1.11(c) ........................................................................ 10

      2.    OptumRx cannot show that the information at issue constitutes "confidential
         government information" as required under Rule 1.11(c) ........................... 12

      3.    OptumRx cannot show that Utah is a "private client" as required under
         Rule 1.11(c) ................................................................................................ 18

      4.    OptumRx cannot show that use of the information at issue could cause a "material
         disadvantage" to OptumRx under Rule 1.11(c) .......................................... 19

   C.    Denying OptumRx's motion upholds the policies underlying the Rule ........... 23

   D.    The *Parkinson* factors affirm that OptumRx's motion should be denied ........ 25

V.    Conclusion ................................................................................................................. 25

TABLE OF AUTHORITIES

**CASES**

*Allied Realty of St. Paul, Inc. v. Exchange Nat'l Bank of Chicago*,
    283 F. Supp. 464 (D. Minn. 1968) ........................................................................... 24

*Anne Arundel Cnty. v. Express Scripts, Inc.*,
    2025 WL 254807 (D. Md. Jan. 21, 2025) ..................................................... 1, 7, 12, 21

*Archuleta v. Turley*,
    904 F. Supp. 2d 1185 (D. Utah 2010) ................................................................. 8, 24

*Biers v. Dentons US LLP*,
    2022 WL 17620382 (D. Utah Dec. 13, 2022) ........................................................ 8

*City of Boston v. Express Scripts, Inc.*,
    No. 1:24-cv-10525-PBS (D. Mass. Oct. 18, 2024) (ECF No. 94) ................................... 1, 7, 21

*City of Chicago v. Purdue Pharma L.P.*,
    2015 WL 920719 (N.D. Ill. Mar. 2, 2015) .............................................................11

*Cnty. of Santa Clara v. Superior Ct.*,
    50 Cal.4th 35 (2010) ............................................................................................ 24

*Commonwealth of Kentucky v. Express Scripts, Inc.*,
    No. 24-cv-00303-KKC (E.D. Ky. June 3, 2025) (ECF No. 55)................................... 1

*Concant v. Robins, Kaplan, Millet & Ciresi, LLP*,
    603 N.W.2d 143 (Minn. Ct. App. 1999) ................................................................11

*Davis v. S. Bell Tel. & Tel. Co.*,
    149 F.R.D. 666 (S.D. Fla. 1993) ............................................................... 13, 17, 18

*Doe 1 v. Francis*,
    2006 WL 8444030 (N.D. Fla. May 8, 2006)...........................................................11

*Flying J Inc. v. TA Operating Corp.*,
    2008 WL 648545 (D. Utah Mar. 10, 2008)............................................................ 24

*Frazier v. Eagle Air Med. Corp.*,
    2024 WL 3961851 (D. Utah Aug. 27, 2024) ................................................................. 8

*General Motors Corp. v. New York*,
    501 F.2d 639 (2d Cir. 1974) ...................................................................................... 24

*Handelman v. Weiss*,
    368 F. Supp. 258 (S.D.N.Y. 1973) ........................................................................... 24

*Hilo Metals Co. v. Learner Co.*,
    258 F. Supp. 23 (D. Haw. 1966) ............................................................................... 24

*In re Blinder, Robinson & Co., Inc.*,
    123 B.R. 900 (Bankr. D. Colo. 1991) ......................................................................... 8

*In re Nat'l Prescription Opiate Litig.*,
    2019 WL 1274555 (N.D. Ohio Mar. 20, 2019) ......................................................... 14

*In re Nat'l Prescription Opiate Litig.*,
    2023 WL 11854226 (N.D. Ohio Oct. 10, 2023) .......................................................... 7

*In re Nat'l Prescription Opiate Litig.*,
    2025 WL 1495363 (N.D. Ohio Apr. 29, 2025) ........................................................... 7

*In re Nat'l Prescription Opiate Litig.*,
    2024 WL 3387288 (N.D. Ohio Mar. 18, 2024) ................................................. *passim*

*In re Nat'l Prescription Opiate Litig.*,
    290 F. Supp. 3d 1375 (J.P.M.L. 2017) ....................................................................... 3

*In re OptumRx, Inc.*,
    2024 U.S. App. LEXIS 26695 (6th Cir. Oct. 22, 2024) ............................. 1, 7, 20, 25

*In re OptumRx, Inc.*,
    2025 U.S. App. LEXIS 4331 (6th Cir. Feb. 24, 2025) ............................................ 1, 7

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
    2006 WL 6846702 (E.D.N.Y. Aug. 7, 2006) ........................................................... 20

*Koch v. Koch Indus.*,
   798 F. Supp. 1525, 1530 (D. Kan. 1992) .................................................................... 8

*Kronberg v. LaRouche*,
   2010 WL 1443934 (E.D. Va. Apr. 9, 2010) ............................................... 15, 18, 22

*Parkinson v. Phonex Corp.*,
   857 F. Supp. 1474 (D. Utah 1994) ................................................................... 8, 9, 24

*People v. Express Scripts, Inc. et al. ("L.A. County")*,
   No. 23STCV20886 (Cal. Super. Ct. Nov. 14, 2024),
   *aff'd sub nom. People v. OptumRx, Inc.*, No. B343828 (Cal. Ct. App. Sept. 4, 2025) ....... *passim*

*Poly Software Intern., Inc. v. Su*,
   880 F. Supp. 1487 (D. Utah 1995) ............................................................................ 7

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984) ................................................................................................... 18

*State of R.I. v. Lead Indus. Ass'n*,
   951 A.2d 428 (R.I. 2008) ......................................................................................... 24

*State of West Virginia ex rel. Discover Finan. Servs., Inc. v. Nibert*,
   744 S.E.2d 625 (W. Va. 2013) ................................................................................. 11

*United States v. Villaspring Health Care Ctr., Inc.*,
   2011 WL 5330790 (E.D. Ky. Nov. 7, 2011) ...................................................... 15, 22

**STATUTES**

Haw. Rev. Stat. § 28-8(a) ............................................................................................. 8

Haw. Rev. Stat. § 28-8(b) ............................................................................................. 8

**OTHER AUTHORITIES**

ABA Comm. on Ethics & Prof. Resp., Formal Op. 509 (2024) ........................... *passim*

ABA Comm. on Ethics & Prof. Resp., Formal Op. 409 (1997) ...................... 12, 14, 15

ABA Model Rule Prof. Cond. 1.11(c) ........................................................................ 11

Black's Law Dictionary (12th ed. 2024)......................................................................... 14

DUCivR 83-1.1(d)(1)....................................................................................................... 10

Fed. R. Evid. 702 .............................................................................................................11

N.Y. State Bar Ass'n Comm. on Prof. Ethics, Op. 1187 (2020) .................................... 25

Neb. Ethics Advisory Op. for Lawyers, Op. 22-01 3150 (2022).................................... 25

Utah R. Prof. Cond. 1.11(c) ..................................................................................... *passim*

Utah R. Prof. Cond. 1.11 cmt. 4.......................................................................... 12, 21, 26

## I.    Introduction

The State of Utah and the Division of Consumer Protection (collectively, "Utah") have sued pharmacy benefit managers ("PBMs"), including OptumRx, Inc. ("OptumRx"), for their alleged role in facilitating an epidemic of opioid addiction in Utah. *See* Doc. 1-1, ¶¶ 377-423. To assist in this litigation, the Utah Attorney General retained Motley Rice LLC ("Motley Rice"), a law firm with experience investigating and litigating opioid related cases. Despite an admittedly universal lack of success, OptumRx revives before this Court its six-times discredited argument to disqualify Motley Rice.[1] Doc. 58 ("OptumRx Br.") at 3. Like each prior motion, OptumRx seeks to disqualify Motley Rice based upon the firm's prior representations of other government entities in their investigations of OptumRx's billing and pricing practices. Specifically, OptumRx alleges that during Motley Rice's prior representations of these government entities, Motley Rice was a "public officer or employee" that acquired "confidential government information" about OptumRx that the firm could use to the company's "material disadvantage" while representing a "private client" (here, under OptumRx's theory, Utah), thereby justifying disqualification under Utah Rule of Professional Conduct 1.11(c) ("Rule 1.11(c)"). These allegations, however, are not supported by the facts or the law.

*First*, Motley Rice was not a "public officer or employee" under Rule 1.11(c) when it gained access to these OptumRx materials. Not only did the prior retainer agreements designate

---

[1] *See In re Nat'l Prescription Opiate Litig.*, 2024 WL 3387288 (N.D. Ohio Mar. 18, 2024), *In re OptumRx, Inc.*, 2024 U.S. App. LEXIS 26695 (6th Cir. Oct. 22, 2024) (*writ denied*), *In re OptumRx, Inc.*, 2025 U.S. App. LEXIS 4331 (6th Cir. Feb. 24, 2025) (*reh'g & reh'g en banc denied*); *Anne Arundel Cnty. v. Express Scripts, Inc.*, 2025 WL 254807, *9 (D. Md. Jan. 21, 2025); *People v. Express Scripts, Inc.* ("*L.A. County*"), No. 23STCV20886, (Cal. Super. Ct. Nov. 14, 2024) (Doc. 58-3 at 428), *aff'd sub nom. People v. OptumRx., Inc.*, B343828 (Cal. Ct. App. Sept. 4, 2025) (Ex. 8) (*L.A. County Appeal*); *City of Boston v. Express Scripts, Inc.*, No. 1:24-cv-10525-PBS (D. Mass. Oct. 18, 2024) (ECF No. 94), (appeal pending) (Doc. 58-3 at 424).

Motley Rice as an independent contractor and not as a public officer or employee, but also in reality Motley Rice was acting as an independent contractor in performing its work on these *ad hoc* investigations. *Second*, the materials produced in the prior government investigations in which Motley Rice was involved are not "confidential government information" under Rule 1.11(c) because they are obtainable from OptumRx through routine discovery and are, therefore, "publicly available." *Third*, Utah does not meet the definition of "private client" under Rule 1.11(c) as Utah, by virtue of the fact that the Office of the Utah Attorney General may access the MDL Discovery Repository,[2] is "legally entitled to employ" the information at issue. And *fourth*, OptumRx cannot show a "material disadvantage" under Rule 1.11(c) given that OptumRx has been under a long-standing obligation in the opioid MDL proceedings to produce these materials into the MDL Discovery Repository. Motley Rice's possession and knowledge of these materials cannot cause a material disadvantage to OptumRx when every other plaintiff attorney in the MDL – along with all plaintiff attorneys in opioid actions against OptumRx and all state or federal law enforcement agencies that have signed the MDL protective order – have access to the same materials.

For each of these reasons, OptumRx's motion to disqualify Motley Rice should be denied. There is nothing in Rule 1.11(c) or in Utah caselaw that warrants this Court reaching a different result than that reached by the other six courts that have denied OptumRx's efforts to disqualify Motley Rice.

## II.    Background

### A.    Overview

---

[2] The MDL court ordered all records previously produced in civil investigations and litigation about the marketing and distribution of opioids be stored and shared in this repository.

OptumRx's motion for disqualification is premised on Motley Rice's access to company documents OptumRx produced to three government entities – the City of Chicago ("Chicago"), the District of Columbia ("D.C."), and the State of Hawaii ("Hawaii") – during Motley Rice's representations of those entities. Each of these attorney-client relationships was initiated after Motley Rice began serving as co-lead counsel in the opioids MDL, after OptumRx had become a defendant in opioid litigation, and after the MDL court ordered all records produced in civil investigations and litigation to be reproduced into the MDL Discovery Repository, a repository to which all plaintiff counsel in the MDL, and numerous state and federal law enforcement agencies (including the Office of the Utah Attorney General), have access.

### B.    The Opioids MDL

The Judicial Panel on Multidistrict Litigation created the opioids MDL on December 5, 2017. *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017). On January 4, 2018, the MDL court appointed Joseph Rice of Motley Rice as co-lead counsel for the Plaintiffs' Executive Committee. *In re Nat'l Prescription Opiate Litig.*, 2024 WL 3387288, *1 (N.D. Ohio Mar. 18, 2024). OptumRx became a defendant in the litigation three weeks later. *Id.*

### C.    Motley Rice's representation of other governmental entities

#### 1.    The Chicago matter

On September 6, 2018, Chicago retained Motley Rice to assist in an investigation of OptumRx's and other PBMs' alleged use of "copay clawbacks" (charging consumers copayments that exceed a pharmacy's customary price for a prescription and/or the amount the pharmacy receives for filling the prescription) and "gag clauses" (prohibitions on pharmacies from telling consumers about the existence of copay clawbacks and/or that consumers may save by paying cash instead of using their insurance). *See* Ex. 6, ¶¶ 4-6 (Kane Decl.).

Chicago's retention agreement with Motley Rice maintained that Chicago controlled all facets of the investigation and any litigation. *Id.* at Ex. A, ¶ 16 (Chicago Retainer Letter). Chicago exercised this control throughout the representation. *Id.*, ¶¶ 6, 10 (Kane Decl.).

During the investigation, Chicago subpoenaed OptumRx seeking documents related to copay clawbacks and gag clauses. *See* Doc. 58-3 at 328. The subpoena was signed by Chicago's Deputy Corporation Counsel. *Id.* at 331. In response, OptumRx produced claims data for drug prescriptions filled for Chicago residents. Doc. 58-2, ¶ 10. OptumRx admits that the subpoenaed information included materials about opioid drugs. *In re Nat'l Prescription Opiate Litig.,* 2024 WL 3387288, *14. In connection with the production, Chicago and OptumRx entered a confidentiality agreement allowing for use of the materials outside the investigation "by a court order or other applicable law." Doc. 58-3 at 335.

### 2.    The District of Columbia matter

On December 1, 2020, D.C. retained Motley Rice to assist in the investigation of OptumRx's and other PBMs' possible violations of D.C.'s consumer protection law and false claims statutes for prescription pricing. Doc. 58-3 at 189.

D.C.'s retention agreement specified that Motley Rice was a contractor and that "[n]either Contractor [Motley Rice] nor any employee of Contractor shall be regarded as employed by, or as an employee of OAG." *Id.* at 194. The agreement also provided that the Attorney General retained control over all aspects of the representation. *Id.* at 192. D.C.'s Attorney General's Office exercised that control throughout the representation. Ex. 5, ¶¶ 6-7 (Weinberg Decl.).

During the investigation, D.C. subpoenaed OptumRx seeking documents related to its pricing and rebate practices for prescription drugs for D.C. residents. Doc. 58-3 at 222-26. The subpoena was signed by an Assistant Deputy Attorney General. *Id.* at 226. OptumRx did not

challenge the subpoena on the basis of Motley Rice's representation of other public entities. *See In re Nat'l Prescription Opiate Litig.,* 2024 WL 3387288, *6. In response to the subpoena, OptumRx produced documents it had previously produced to the Minnesota Attorney General. Doc. 58-1, ¶¶ 14, 22; Doc. 58-3 at 5. OptumRx admits that the documents it produced included materials about opioid drugs. *In re Nat'l Prescription Opiate Litig.,* 2024 WL 3387288, *14. In connection with the production, D.C. and OptumRx entered a confidentiality agreement. Doc. 58-3 at 229.

### 3.    The Hawaii matter

On April 29, 2021, Hawaii retained Motley Rice to assist in an investigation (and subsequent litigation) of OptumRx's and other PBMs' alleged deceptive and unfair practices in their marketing and pricing of prescription drugs. Doc. 58-3 at 255. The retention agreement for "Special Deputy Attorney General Services"[3] provides that the firm is an independent contractor and its employees and agents "are not by reason of this Agreement, agents or employees of the State for any purpose[.]" *Id.* at 265. The agreement also provides that Motley Rice is subject to the State's control in performing the civil investigation and litigation. *Id.* at 255-57. Hawaii has exercised that control throughout the representation. Ex. 4, ¶ 6 (Price Decl.).

During the investigation, Hawaii subpoenaed OptumRx seeking documents related to its pricing and rebate practices for prescription drugs for Hawaii consumers. Doc. 58-3 at 297. The subpoena was signed by the then Hawaii Attorney General. *Id.* at 288. OptumRx did not challenge the subpoena on the basis of Motley Rice's representation of other public entities. *In re*

---

[3] While full-time deputy employees of the Hawaii Attorney General may "exercise any and all duties or powers . . . conferred upon the attorney general[,]" Haw. Rev. Stat. § 28-8(a), separately retained outside counsel ("special deputies") have authority limited to the terms of their appointment, *id.* at § 28-8(b).

*Nat'l Prescription Opiate Litig.,* 2024 WL 3387288, *6. In response to the subpoena, OptumRx produced the same set of documents previously produced to D.C. (i.e., that set of documents that it had earlier produced to the Minnesota Attorney General, and which included documents about opioids and opioid manufacturers). Doc. 58-1 ¶ 22; Doc. 58-3 at 314-15; *In re Nat'l Prescription Opiate Litig.,* 2024 WL 3387288, *14. OptumRx and Hawaii entered a confidentiality agreement in connection with the production, which allowed use of the materials outside the Hawaii investigation "as required by law or court order." Doc. 58-3 at 304.

### D. OptumRx's production of the documents at issue into the MDL Discovery Repository

Since April 11, 2018, "all Defendants" in the opioids MDL were required to produce into the MDL Discovery Repository all non-privileged documents previously produced in civil investigations, litigations, and administrative actions relevant to the claims in the MDL proceedings. *In re Nat'l Prescription Opiate Litig.,* 2024 WL 3387288, *11 (citing Case Management Order No. 1). This requirement "unambiguously obligate[s] OptumRx," which has been a defendant in the MDL since February 2018. *Id.* at *11-13.[4]

OptumRx has conceded that the productions it made in response to the Chicago, D.C., and Hawaii investigations are relevant to claims in the MDL proceedings. *Id.* at *14. Thus, OptumRx was (and for years had been) required to produce into the MDL Discovery Repository all the government investigation documents at issue in its motion to disqualify. *See id.* On March 26, 2024, OptumRx brought itself into compliance with the MDL Discovery Repository orders, and thus all plaintiff counsel who have signed the MDL protective order have access to the

---

[4] The special master in the MDL subsequently entered Discovery Ruling No. 22 ("DR-22") which held, *inter alia*, that the document production obligation is "ongoing" and that production of all documents in response to state or municipal government investigations are included in the requirement. *Id.* at *11-13.

documents that form the basis for OptumRx's motion to disqualify. *See* Ex. 2 (OptumRx Production Letter May 2024). So, too, does the Office of the Utah Attorney General. *See, e.g.,* Ex. 3 (Acknowledgement and Agreement of Assistant AG Kevin McLean).

### E.    OptumRx's multiple unsuccessful efforts to disqualify Motley Rice

Despite being aware since early 2018 that Motley Rice was involved in opioids litigation, OptumRx did not raise the disqualification issue with the opioids MDL Court until March 2023 and did not file its first motion to disqualify Motley Rice until December 2023. *In re Nat'l Prescription Opiate Litig.,* 2024 WL 3387288, *4. Notably, OptumRx did not oppose Motley Rice subsequently being retained by Chicago, D.C., or Hawaii, nor did OptumRx object to the subpoenas issued by these three different governmental entities. *Id.* at *6.

Significantly, as explained in footnote 1 above, OptumRx's argument for disqualification has been rejected by every court that has considered it: by the opioids MDL court, *In re Nat'l Prescription Opiate Litig.*, 2024 WL 3387288; by the Sixth Circuit Court of Appeals, <u>twice</u>, *In re OptumRx, Inc.*, 2024 U.S. App. LEXIS 26695 (*writ denied*), & *In re OptumRx, Inc.*, 2025 U.S. App. LEXIS 4331 (*reh'g & reh'g en banc denied*); by the District Court for the District of Massachusetts, *City of Boston,* No. 1:24-cv-10525 (D. Mass Oct. 18, 2024), (ECF No. 94) (appeal pending); by the District Court for the District of Maryland, *Anne Arundel Cnty.*, 2025 WL 254807 (D. Md. Jan. 21, 2025); and by the Superior Court for Los Angeles County, *L.A. County*, No. 23STCV20886 (Cal. Super. Ct. Nov. 14, 2024), *aff'd, People v. OptumRx* (Ex. 8).[5]

---

[5] OptumRx's serial, unfounded disqualification motions against participants in the opioids MDL are not directed solely against Motley Rice. *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 2023 WL 11854226 (N.D. Ohio Oct. 10, 2023) (denying OptumRx's motion to disqualify the MDL special master), *writ denied sub nom. In re OptumRx*, 2023 U.S. App. LEXIS 30291 (6th Cir. Nov. 14, 2023); *In re Nat'l Prescription Opiate Litig.*, 2025 WL 1495363 (N.D. Ohio Apr. 29, 2025) (denying OptumRx's motion to disqualify the MDL federal judge), *writ pending*.

### III.    Legal Standard

The "control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge, and is thus a matter of judicial discretion." *Poly Software Intern., Inc. v. Su*, 880 F. Supp. 1487, 1489 (D. Utah 1995) (quoting *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1383 (10th Cir. 1994)). A district court relies on "two sources of authority to guide the exercise of its discretion" – first, "the local rules of the court in which [attorneys] appear," and second, "the ethical rules announced by the national profession and considered 'in light of the public interest and the litigants' rights.'" *Id*. at 1489-90; *see also* DUCivR 83-1.1(d)(1) (providing that attorneys practicing before this Court "are governed by" and "must comply with" the rules of practice adopted by this Court and the Utah Rules of Professional Conduct).[6] Accordingly, this Court considers the Utah Rules of Professional Conduct. Where the American Bar Association ("ABA") Model Rule of Professional Conduct 1.11(c) mirrors the Utah rule, courts find the rule and caselaw interpreting the model rule instructive. *See Cole*, 43 F.3d at 1384.

"[M]otions to disqualify are granted rarely unless an ethical violation has occurred that would taint the underlying trial." *Archuleta v. Turley*, 904 F. Supp. 2d 1185, 1191-92 (D. Utah 2010); *Parkinson v. Phonex Corp.*, 857 F. Supp. 1474, 1480 (D. Utah 1994) ("It should be observed that federal courts have treated a motion for disqualification as one that should only rarely be granted.").[7] The party seeking disqualification bears the burden of persuasion and must adequately

---

[6] OptumRx relies heavily on its retained experts to offer opinions of law about Rule 1.11(c). This is inappropriate, and these opinions should not be credited. *See* Fed. R. Evid. 702; *Frazier v. Eagle Air Med. Corp.*, 2024 U.S. Dist. LEXIS 154075, *4 (D. Utah Aug. 27, 2024) ("[I]t is generally accepted that 'an expert may not state legal conclusions drawn by applying the law to the facts.'" (citation omitted)).

[7] Though OptumRx cites *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1530 (D. Kan. 1992) for the proposition that "doubts are resolved in favor of disqualification," that quote ultimately derives from an outdated Second Circuit standard. *See id.* at 1530 (citing *In re Blinder, Robinson & Co., Inc.*, 123 B.R. 900, 907-08 (Bankr. D. Colo. 1991) (relying on collected Second Circuit cases)).

show how the participation of the attorney for the remainder of the case would taint the litigation. *Parkinson*, 857 F. Supp. at 1480; *see also Biers v. Dentons US LLP*, 2022 WL 17620382, *2 (D. Utah Dec. 13, 2022) (describing burden as "heavy" and disqualification an "extreme remedy").

Even if it finds an ethical violation, the court still must weigh several factors before ordering disqualification: (1) the egregiousness of the violation, (2) the presence or absence of prejudice to the other side, (3) hardship to the other side, (4) whether and to what extent there has been a diminution of effectiveness of counsel, and (5) the stage of trial proceedings. *Parkinson*, 857 F. Supp. at 1476.

## IV.    Argument

### A.    Utah Rule of Professional Conduct 1.11 reflects a balancing of interests

In the motion to disqualify, OptumRx alleges that Motley Rice has violated Utah Rule of Professional Conduct 1.11(c).  The Rule imposes four separate and distinct requirements, each one of which a movant must satisfy, before a court may disqualify opposing counsel:

> Except as law may otherwise expressly permit, a lawyer **[1]** having information that the lawyer knows is confidential government information about a person **[2]** acquired when the lawyer was a public officer or employee may not **[3]** represent a private client whose interests are adverse to that person **[4]** in a matter in which the information could be used to the material disadvantage of that person. As used in this Rule, the term "confidential government information" means information that has been obtained under governmental authority and which, at the time the Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and which is not otherwise available to the public . . . .

Utah R. Prof. Conduct 1.11(c) (numbering added).

Rule 1.11 "represents a balancing of interests" between the government's ability to obtain representation from qualified lawyers, while mitigating the risk that a lawyer could abuse government authority such that "unfair advantage could accrue to the other client by reason of access to confidential government information about the client's adversary obtainable *only*

through the lawyer's government service." *See id.* cmt. 4 (emphasis added).  It has been "narrowly and precisely drawn." *See* ABA Comm. on Ethics & Prof. Resp., Formal Op. 409 at 11 (1997) (discussing purposes of Model Rule 1.11); *see also* Ex. 7 (Baker Rpt.) at 20 (tracing evolution of Model Rule 1.11 and explaining that "[t]he history of ABA Rule 1.11 has been one of continuous efforts to narrow and fine tune the scope of the Rule").

As explained by the MDL court, "[i]f the rule is interpreted too broadly, it could discourage qualified lawyers from entering government service. If interpreted too narrowly, it could incentivize abuses of governmental power and erode public trust in the government." *In re Nat'l Prescription Opiate Litig.,* 2024 WL 3387288, *6. Application of the Rule ultimately "will depend on the facts" to ensure that this balance is upheld. ABA Comm. on Ethics & Prof. Resp., Formal Op. 509 at 3 n.7 (2024).

**B.    OptumRx's motion to disqualify Motley Rice under Rule 1.11(c) should be denied**

**1.    OptumRx cannot show that Motley Rice was a "public officer or employee" as required under Rule 1.11(c)**

OptumRx cannot show that Motley Rice was a "public officer or employee" under Rule 1.11(c) while representing Chicago, D.C., or Hawaii because the firm did not itself wield government authority. *See* Ex. 6, ¶ 5; Ex. 5, ¶ 6; Ex. 4, ¶ 4. Although the ABA explains that Rule 1.11(c) may reach "lawyers in private practice who are appointed to be special prosecutors," that application is not the case here. Each government entity's retainer agreement specified that Motley Rice's attorneys were independent contractors, not government employees, and/or that they worked subject to the government entity's control. Ex. 6 at Ex. A, ¶ 16; Doc. 58-3 at 192; Doc. 58-3 at 265. Further, each government entity did in fact exercise control over Motley Rice's work performed under the retention agreements. Ex. 6, ¶ 7; Ex. 5, ¶ 6; Ex. 4, ¶ 6.

Substantial authority holds that when governments retain private lawyers on a contingency fee basis for a particular matter, those private attorneys not public employees. *See, e.g.*, *City of Chicago v. Purdue Pharma L.P.*, 2015 WL 920719, *3-4 (N.D. Ill. Mar. 2, 2015) (finding that retained private firm was an independent contractor, not a government employee or official); *Doe 1 v. Francis*, 2006 WL 8444030, *9-10 (N.D. Fla. May 8, 2006) (same); *State ex rel. Discover Finan. Servs., Inc. v. Nibert*, 744 S.E.2d 625, 634 (W. Va. 2013) (holding that retained private attorney was not a government employee); *Concant v. Robins, Kaplan, Millet & Ciresi, LLP*, 603 N.W.2d 143, 149 (Minn. Ct. App. 1999) (same). Notably, the ABA recognized, with respect to the Model Rule 1.11's "public officer or employee" requirement, that:

> [A] viable argument can be made, based on the stated purpose of Rule 1.11 reflected in its commentary and legislative history, that the conflict of interest obligations of lawyers who are retained on an *ad hoc* basis to perform work for a government entity will ordinarily be determined by Rule 1.9 and not Rule 1.11.

ABA Formal Op. 409 at 5 n.4. "Ad hoc" means "for this special purpose." Black's Law Dictionary (12th ed. 2024). Likewise, each retention contract between the government entities and Motley Rice shows that Motley Rice was being retained for *a specific and limited purpose*. *See* Ex. 6 at Ex. A, ¶ 16; Doc. 58-3 at 193; Doc. 58-3 at 249. Thus, Motley Rice was not a public official or employee under Rule 1.11(c). *See* Ex. 7 (Baker Rpt.) at Part 5.

Although the MDL court found that Motley Rice was a public officer or employee, Utah respectfully believes that the MDL court's analysis on this point was erroneous. *First*, the MDL court disregarded the government entities' sworn declarations explaining how Motley Rice performed its work under those entities' control and supervision. As the retention contracts and the declarations from Chicago, D.C., and Hawaii show, Motley Rice lawyers worked subject to the control and supervision of government attorneys and thus did not wield government authority. Ex. 6, ¶ 10; Ex. 5, ¶ 6; Ex. 4, ¶ 6; Ex. 6, Ex. A ¶ 16; Doc. 58-3, 193; Doc. 58-3, 255. *Second*, the MDL

court did not fully consider that the relevant subpoenas were issued by the government entities, not by Motley Rice. *Compare In re Nat'l Prescription Opiate Litig.,* 2024 WL 3387288, \*7, *and* Ex. 4 ¶ 6; Ex. 5 ¶ 6; Ex. 6 ¶ 7. And *third*, the MDL court did not address the authority holding that private attorneys retained by government entities for specific and limited matters are not public officers or employees. *See* ABA Formal Op. 409 at 5 n.4. In sum, there are ample grounds to find that Motley Rice was not a "public officer or employee."

### 2.    OptumRx cannot show that the information at issue constitutes "confidential government information" as required under Rule 1.11(c)

OptumRx cannot show that Motley Rice obtained confidential government information about OptumRx in its representations of the government entities. Rule 1.11(c) imposes three independent requirements for information to constitute "confidential government information":

> As used in this rule, the term "confidential government information" means information **[1]** that has been obtained under government authority **[2]** and which, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a privilege not to disclose and **[3]** which is not otherwise available to the public.

Utah R. Prof. Cond. 1.11(c) (numbering added). By its plain language, "Rule 1.11(c) does not apply to all information obtained under government authority" as it excludes information that is publicly available. *In re Nat'l Prescription Opiate Litig.,* 2024 WL 3387288, \*9 (quoting ABA Formal Op. 509 at 4); *Anne Arundel Cnty.*, 2025 WL 254807, \*9 (same); *L.A. County*, Doc. 58-3 at 433 (same). "Whether information is publicly available – e.g., whether it can be obtained through routine discovery – will be a question of fact." ABA Formal Op. 509 at 4; *see In re Nat'l Prescription Opiate Litig.,* 2024 WL 3387288, \*9, 10 (citing ABA Formal Op. 509 at 4). OptumRx admits the documents at issue are "available through discovery," *see* OptumRx Br. at 9, and yet ignores this part of the ABA definition when discussing "confidential government information" (despite later criticizing other courts' reliance on that part of the definition). *Id.* at

20-22.

"[T]he many courts that have considered this issue already" have "agree[d]" that the information at issue here, "that may be obtained through routine discovery . . . is 'available to the public' and not confidential government information under rule 1.11(c)." *See* Ex. 8 at 2 (*L.A. County Appeal*); *In re Nat'l Prescription Opiate Litig.*, 2024 WL 3387288, *11; *L.A. County*, Doc. 58-3 at 434. The reasoning underpinning this finding is solid. *First*, responses to a state civil investigative demand are subject to discovery. *See Davis v. S. Bell Tel. & Tel. Co.*, 149 F.R.D. 666, 674 (S.D. Fla. 1993) (responses to Florida's CID requests were discoverable and thus not confidential government information); *In re Nat'l Prescription Opiate Litig., supra,* 2024 WL 3387288, *10 (citing *Davis* with approval); *L.A. County*, Doc. 58-3 at 434 (same). OptumRx offers no authority to the contrary. OptumRx's responses to the subpoenas are "analogous to responses to civil investigation demands," and therefore subject to discovery. *See L.A. County*, Doc. 58-3 at 434.

*Second*, because OptumRx produced the documents at issue to the MDL Discovery Repository it is self-evident that these documents *are* accessible through routine discovery. Ex. 2 (OptumRx Production Letter); OptumRx Br. at 23; *LA County*, Doc. 58-3 at 434 ("[T]he documents have already been produced – and Motley Rice and all MDL plaintiffs 'can use them' – in the MDL. The fact that they have already been discovered establishes that they 'can be obtained through routine discovery.'" (internal citations omitted)).

*Third*, the mere fact that a private party has designated documents as confidential under a protective order does not *per se* take those documents outside the ambit of public availability through routine discovery. *In re Nat'l Prescription Opiate Litig.,* 2024 WL 3387288, *9 ("A protective order or confidentiality agreement does not make discovery non-routine."); *id.* at

- 13 -

*9 ("[P]roduction of confidential information under a protective order happens in more civil cases than not – it is routine. . . . [C]onfidential information is not among the limitations to [Rule 26]. Instead, Rule 26 provides . . . for the Court to protect a party's trade secret or other confidential information that is otherwise subject of routine discovery.").

*Fourth*, OptumRx's argument that the documents at issue were produced to Chicago, D.C., and Hawaii under a confidentiality agreement in no way changes the analysis. Both the Chicago and Hawaii confidentiality agreements allow for use of the OptumRx documents outside the particular investigations by a court order.[8] *See* Doc. 58-3 at 229, 335. The orders requiring OptumRx to produce these documents into the MDL Discovery Repository, of course, constitute court orders allowing for their use outside the particular investigations and underscore that these documents were indeed obtainable through routine discovery.

Perhaps recognizing that it cannot succeed in arguing that the company documents produced in response to the subpoenas constituted confidential government information, OptumRx argues that Motley Rice allegedly derived "mental roadmaps" or "strategic insights" that constitute confidential government information. *See* OptumRx Br. at 14-17.  This argument lacks both legal and factual foundation.

*First*, the authority relied upon by OptumRx for this assertion is inapposite. *In re Nat'l Prescription Opiate Litig.*, 2019 WL 1274555 (N.D. Ohio Mar. 20, 2019), involved internal *government* information rather than external *company* documents. In that case, a former U.S. Attorney worked on a task force gathering information (primarily at internal government meetings) on how to prevent the diversion of opioids. *Id*. The attorney later "side-switched" in

---

[8] The D.C. confidentiality agreement did not contain a similar "court order" provision.  *See* Doc. 58-3, 229-35.  But that does not matter because the documents produced in response to the D.C. and Hawaii subpoenas were identical.  *See* Doc. 58-3 at 5, ¶ 7.

the same matter, defending corporate defendants *against* the task force's allegations, after having received "nonpublic government information" through participating in the task force. *See In re Nat'l Prescription Opiate Litig*., 2024 WL 3387288, \*15-16 (court acknowledging that the "significant factual differences between [that] situation and the present one" rendered the case inapposite). *United States v. Villaspring Health Care Center, Inc.*, 2011 WL 5330790 (E.D. Ky. Nov. 7, 2011), which also involved internal *government* interviews rather than external *company* documents, was also a case of "side-switching." In that case, the attorney had gathered information about criminal abuse and neglect at the Villaspring facility in his role as an Assistant Attorney General in the Medicaid Fraud Control Unit. *Id*. at \*2-3.  The attorney then switched sides to defend the facility against the MFCU, taking with him knowledge of the government's claims. *Id*. at \*17-19. Lastly, *Kronberg v. LaRouche*, 2010 WL 1443934, \*1 (E.D. Va. Apr. 9, 2010), involved grand jury materials, including classified information, which ABA Formal Opinion 509 recognizes as true confidential government information. *See* ABA Formal Op. 509 at 4. There, the subject attorney had represented a criminal defendant years earlier and was disqualified from representing a witness-turned-plaintiff based on his knowledge of the prior grand jury materials. *Kronberg*, 2010 WL 1443934, \*4-5. Thus, none of these cases supports that "mental roadmaps" and "strategic insights" deriving from true confidential government information are present here, where "Motley Rice's insights or mental roadmap derived from publicly available documents were not confidential government information." Ex. 8 at 15 (*L.A. County Appeal*).

*Second*, and unlike any of the above cases, OptumRx's argument here is unsupported by the factual record. *See, e.g.*, *L.A. County*, Doc. 58-3 at 434 (characterizing OptumRx's "strategic insights" and "mental roadmaps" argument as "speculative, vague, and amorphous"). OptumRx

identifies no actual insights or mental roadmaps. *See* OptumRx Br. at 8, 19-20 (merely broadly restating the Complaint's allegations in a conclusory fashion). Moreover, and in any event, any alleged strategic insights or mental roadmaps "would most likely derive from the documents themselves, so it is doubtful that the depositions would reveal different confidential government information . . . ." *Id.* Indeed, all that OptumRx can muster in support of this flawed argument are (1) memos that Motley Rice drafted based on the documents, (2) information that Motley Rice obtained in meetings with OptumRx, and (3) information about OptumRx that Motley Rice obtained from other sources. *See* OptumRx Br. at 15. With regard to the first, as noted above, "[a] strategic insight or mental roadmap, assuming one exists, would most likely derive from the documents themselves . . . ." *See L.A. County*, Doc. 58-3 at 434. With regard to the second, the meetings with OptumRx referred to in the cited declarations pertained to negotiating the confidentiality agreements and could not have presented any information independent of the documents. And with regard to the third, the purported existence of such information from other sources is speculative, vague, and amorphous. *See id.* For all the foregoing reasons, OptumRx has failed to carry its burden in establishing that the information at issue was in fact "confidential government information."

OptumRx further argues that information is publicly available only when it can be obtained from the government through a public record request. OptumRx Br. at 21. This argument is flawed on multiple levels. *First*, it is inconsistent with the plain language of the Rule. Rule 1.11(c) has two separate requirements that must be satisfied in order for information obtained under government authority to constitute confidential government information: that at the time the Rule is being applied the information (1) is prohibited or privileged from disclosure *and* (2) is not otherwise available to the public. Utah R. Prof. Cond. 1.11(c). OptumRx's

- 16 -

argument would wholly write this second requirement out of the Rule.

*Second*, OptumRx's argument that public availability through routine discovery refers to only public-records requests, like FOIA or GRAMA, misreads ABA Formal Opinion 509. *See* OptumRx Br. at 20-21. The Formal Opinion's discussion of FOIA or like requests occurs in a footnote to a discussion of government prohibition or privilege – the first requirement. *See* ABA Formal Op. 509 at 4 & n.13. The Opinion then further addresses the Rule's *additional* requirement that the information not be "otherwise available to the public," explaining that information is publicly available when "it can be obtained through routine discovery" and that this "will be a question of fact." *Id.* at 4. Since the Rule requires that the information be both prohibited or privileged from government disclosure *and not otherwise available to the public*, the ABA Formal Opinion's reference to routine discovery in connection with the latter must mean discovery from someone *other than* the government – like from private parties in litigation.

*Third*, OptumRx's FOIA argument would lead to illogical results. The information at issue is contained in *OptumRx documents, not government documents*. OptumRx admits that these documents relate to opioids. *See* OptumRx Br. at 23. Therefore, *any* competent plaintiff counsel in an opioids case can obtain the same documents from OptumRx through routine discovery requests. It defies common sense that Rule 1.11(c) would treat the discoverable OptumRx documents as protected confidential government information just because a plaintiff counsel might not also be able to obtain them from the government through a FOIA or public-records request. Whether the OptumRx documents are obtainable from the government does not matter; the documents are not confidential government information when any opioid litigation plaintiff can obtain them directly from OptumRx. *See Davis*, 149 F.R.D. at 674 (CID materials were "otherwise available" and "therefore do not constitute confidential information.").

Simply put, the definition of confidential government information in Rule 1.11(c) is not an "everything except" rule that treats as confidential government information all the records produced to the government except that which is subject to public record requests. Rather, Rule 1.11(c) is an "only if" rule that makes information confidential government information *only if* both of the two requirements are met. By its plain language, the Rule is precisely and narrowly drawn to protect against the use of information that is "obtainable *only* through the lawyer's government service" and no other source. *See* Utah R. Prof. Cond. 1.11 cmt. 4 (emphasis added).

That routinely discoverable information is not confidential government information does not, contrary to OptumRx's suggestion, write Rule 1.11(c) out of existence. *See* OptumRx Br. at 22.[9] The Rule protects *truly* confidential government information, which would likely include grand jury materials, search warrant information, regulatory information, national security information, and information obtained through formal or informal attorney interviews. *See In re Nat'l Prescription Opiate Litig.,* 2024 WL 3387288, *10; ABA Formal Op. 509 at 4; *Kronberg,* 2010 WL 1443934, *1 (classified information); *Davis*, 149 F.R.D. at 674-75 (grand jury materials). As Utah's expert explained, "courts have only rarely concluded that the information at issue met the Rule's requirement of 'confidential government information.' . . ." Ex. 7 (Baker Rpt.) at 28.

In sum, the information at issue is not "confidential government information" under Rule 1.11(c) and, therefore, the motion to disqualify should be denied on this ground.

### 3.    OptumRx cannot show that Utah is a "private client" as required under Rule 1.11(c)

---

[9] OptumRx also argues that "documents are not 'available to the public' simply because they are or can be produced in civil discovery." OptumRx Br. at 22. But the cases it relies upon merely address a court's power to enter protective orders and are, thus, entirely off-point. *See id.* (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)).

OptumRx cannot show that Utah is a "private client" as that term is used in Rule 1.11(c). The ABA has explained that the term "private client" may include public entities and officials represented by a private lawyer, but only "if those clients are *not legally entitled* to employ the confidential information" at issue. *See* ABA Formal Op. 509 at 8-9 (emphasis added). The logic behind this reasoning is plain: "When the law permits the client to use the confidential government information that the lawyer acquired while in government service, the reason for the disqualification provision – i.e., to prevent the improper use of confidential government information – is inapplicable, and the client's countervailing interest in counsel of choice outweighs any conceivable interest in a wooden application of the rule." *Id.* at 9 n.30.

Here, Utah is legally entitled to access the information at issue because its Attorney General's Office signed the MDL Protective Order. *See* Ex. 3 (Acknowledgement and Agreement of Assistant AG Kevin McLean). Accordingly, Utah is not a 'private client' warranting disqualification of Motley Rice under Rule 1.11(c). ABA Formal Op. 509 ("Although the term 'private client' might be read broadly to include any client whom the lawyer represents in private practice, it would not serve the Rule's purpose to disqualify a lawyer from representing a public entity that is legally entitled to use the information in question."). In sum, OptumRx cannot carry its burden as to proving this element of Rule 1.11(c).

### 4. OptumRx cannot show that use of the information at issue could cause a "material disadvantage" to OptumRx under Rule 1.11(c)

Rule 1.11(c) provides for disqualification of a former government lawyer *only* upon a showing that that lawyer's prior access to confidential government information could be used to "materially disadvantage" the party seeking disqualification in the current litigation. Utah R. Prof. Conduct 1.11(c). Even assuming *arguendo* that the information at issue were in fact "confidential government information" (which it is not), use of the information by Motley Rice

could not materially disadvantage OptumRx under Rule 1.11(c).

"[W]hether the information 'could be used to [the person's] material disadvantage'" is a question of fact. ABA Formal Op. 509 at 4. The material-disadvantage element asks whether the lawyer's access to the information could put the opposing party "at any material disadvantage compared to the position it would occupy if the plaintiffs had different counsel." *See In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 2006 WL 6846702, *24 (E.D.N.Y. Aug. 7, 2006). Put another way, OptumRx must show that Motley Rice obtained information from OptumRx when working on those prior matters that (1) "could be used to the material disadvantage" of OptumRx here, *and* (2) could not be obtained by Utah in the present litigation by its attorneys who are not at Motley Rice.

OptumRx cannot do so. The facts show that Motley Rice's access to the OptumRx documents could not materially disadvantage OptumRx because OptumRx was required to produce (and over a year ago *did* produce) these documents into the MDL Discovery Repository in compliance with the MDL court's orders, and all plaintiff counsel in the MDL, as well as counsel in other opioid litigation and law enforcement agencies that signed the MDL protective order, have long had access to the documents.

Indeed, every other court to consider the "material disadvantage" issue has concluded that use of the information could not materially disadvantage OptumRx. *See In re Nat'l Prescription Opiate Litig.,* 2024 WL 3387288, *15 ("The MDL Repository Orders require OptumRx to produce the Investigation documents in the MDL, where all other plaintiffs' attorneys can use them. It is obvious that Motley Rice's possession and knowledge of the Investigation documents cannot, by itself, cause a material disadvantage to OptumRx, when every other plaintiff's attorney also has them. No further analysis is necessary."); *In re OptumRx,*

*Inc.,* 2024 U.S. App. LEXIS 26695, *3 ("Even under *de novo* review, the district court's well-reasoned analysis compels the conclusion that OptumRx faces no material disadvantage from any information Motley Rice obtained in the Chicago, D.C., and Hawaii investigations because it should have already been produced into the MDL discovery repository pursuant to the district court's case management orders and discovery rulings."); *Anne Arundel Cnty. v. Express Scripts, Inc.*, 2025 WL 254807, *9 (D. Md. Jan. 21, 2025) ("All of the information that Motley Rice obtained from OptumRx during the Chicago, D.C., and Hawaii investigations has been placed into the MDL discovery repository. Here, the County's non-Motley Rice attorneys, just like its Motley Rice counsel, have access to the documents in the MDL discovery repository. OptumRx fails to show that it faces any greater disadvantage from the involvement of the County's Motley Rice counsel than it does from its non-Motley Rice attorneys." (citations omitted)); *L.A. County*, Doc. 58-3 at 436 ("County Counsel signed the protective order. . . . Since County Counsel appear authorized to use the documents on Plaintiff's behalf, OptumRx cannot suffer a material disadvantage if Motley Rice uses them too."); *City of Boston*, Doc. 58-3 at 425-26 ("Optum fails to demonstrate that it would suffer a material disadvantage since the MDL defendants were required to produce all documents previously produced in response to the Chicago, Washington D.C., and Hawaii opioid investigations into the MDL repository. Therefore, because all Plaintiffs counsel can access this MDL repository, Optum faces no material disadvantage from any access to documents Motley Rice gained by representing the other government entities.").

OptumRx nonetheless argues that Motley Rice's access to these documents puts it at a material disadvantage. *See* OptumRx Br. at 18-20. Yet, tellingly, despite having the burden of proof, nowhere in OptumRx's brief does it identify with any specificity what documents, what information, and what strategic advantage Motley Rice obtained that any other attorney could not

and has not also obtained through their access to these materials. *Id.* at 18-20. Simply put, OptumRx's contention is speculative, vague, amorphous, and belied by the evidence. *See L.A. County*, Doc. 58-3 at 434.

OptumRx also argues that the "material disadvantage" standard asks whether the confidential government information is "relevant" to the private litigation. OptumRx Br. at 18. This is wrong. *First*, the authority cited by OptumRx for this unfounded assertion is off-point and unsupported.[10] *And second*, and most importantly, OptumRx's argument has no grounding in the language of the Rule. Rule 1.11(c) states that "a lawyer who was a public official or employee and, during that employment, acquired information that the lawyer knows is confidential information about a person, may not represent a private client whose interests are adverse to that person in a matter *in which the information could be used to the material disadvantage of that person*." Utah R. Prof. Cond. 1.11(c) (emphasis added). Had the drafters of the Rule desired to broaden the Rule to require mere relevancy, they would have written the rule to read ". . . in which the information is relevant to that matter." They, of course, did not. As discussed above, "Rule 1.11, its Comments, the ethics opinions, and the case law are all clear that the universe of potentially disqualifying 'confidential government information' is a very small one. And the portion of that information that 'could be used to materially disadvantage' the opposing party is smaller still." Ex. 7 (Baker Rpt.) at 37. The test for "material disadvantage" is thus not one of simple relevancy.

---

[10] No authority cited by OptumRx for support connects relevancy with the material disadvantage standard.  Neither *Kronberg*, 2010 WL 1443934, nor *Villaspring*, 2011 WL 5330790, supports the proposition that all information that may "become relevant" to the litigation creates a material disadvantage.  And neither the New York State Bar Ass'n Comm. on Prof. Ethics, Op. 1187 (2020), nor the Nebraska Ethics Advisory Op. for Lawyers, Op. 22-01 3150 (2022), address whether the information at issue in those cases was "relevant" to the matter.

OptumRx's argument that the MDL court engaged in an effort "to cleanse Motley Rice's ethical violations" by ordering OptumRx to produce the documents at issue into the MDL Discovery Repository, *see* OptumRx Br. at 23, fares no better.[11] OptumRx was under a long-standing court-ordered obligation to produce these documents into the Repository, and OptumRx's failure to comply with this obligation in a timely manner in no way constitutes a retroactive "cleansing."[12] Since the information at issue is available to every plaintiff counsel and state attorney general office who has signed the MDL protective order, the fact that Motley Rice also has access to this information can cause no material disadvantage to OptumRx. Indeed, Utah's Office of the Attorney General may access the MDL Discovery Repository, so OptumRx cannot suffer a material disadvantage if Motley Rice uses it, too.

In sum, OptumRx has not carried its burden in establishing that it could suffer a material disadvantage due to Motley Rice's access to these publicly available documents. For this reason, too, this Court should deny the motion to disqualify.

### C.    Denying OptumRx's motion upholds the policies underlying the Rule

As explained in Section A above, Rule 1.11 reflects a balancing of interests between encouraging qualified lawyers to enter government service on the one hand, and guarding against a lawyer's misuse of government authority on the other. Utah R. Prof. Cond. 1.11, cmt. 4. Since

---

[11] With this assertion, OptumRx baselessly impugns the MDL court's integrity.  As there was no acquisition of confidential government information by Motley Rice, and there is no evidence of material disadvantage in the MDL (or elsewhere), there is no ethical violation to be cleansed.

[12] As the MDL court noted, "OptumRx has not been meeting its MDL Repository obligations *in full* for some time, even after being repeatedly reminded and asked to do so by plaintiffs. The Court frowns on this continued recalcitrance and will brook it no further; and warns OptumRx against pursuing this approach generally as discovery goes forward." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 3387288, *16 (N.D. Ohio Mar. 18, 2024) (emphasis in original). OptumRx produced the documents to the MDL Discovery Repository on March 26, 2024. Ex. 2.

Utah can use the OptumRx documents no matter who its retained counsel are, there is no risk of a lawyer's misuse of government authority here. Absent that risk, the Rule's balancing of interests requires that Utah's choice of counsel be upheld. *See* ABA Formal Op. 509 at 9 n.30 ("[T]he Rule should not apply in situations in which the lawyer is legally permitted to use the information in question."); *see also Flying J Inc. v. TA Operating Corp.*, 2008 WL 648545, *6 (D. Utah Mar. 10, 2008) (emphasizing "that a party in a civil case has an interest in being able to retain counsel of its choice").

OptumRx has nonetheless argued for a one-sided reading of Rule 1.11(c) that would write the balancing of interests out of the rule and disconnect the resolution from the reality of this situation.[13] OptumRx's one-sided reading would improperly hinder the government's power to protect the public against conduct alleged in the Complaint. Retaining private lawyers who are knowledgeable on a particular subject enables a government to leverage additional resources, under its direction, to fulfill duties to enforce the law.[14] This is exactly what OptumRx aims to prevent with its serial, unfounded calls to disqualify the lawyers who are best equipped to help governments hold it to account. *See Archuleta*, 904 F. Supp. 2d at 1191 (motions to disqualify "are often wasteful, time-consuming, and used for tactical, not substantive purposes");

---

[13] OptumRx relies on caselaw applying earlier and now-repealed versions of ethics rules addressing government attorneys. *See* OptumRx Br. at 11-12 (citing *Allied Realty of St. Paul, Inc. v. Exchange Nat'l Bank of Chicago*, 283 F. Supp. 464, 465-70 (D. Minn. 1968); *Handelman v. Weiss*, 368 F. Supp. 258, 264 (S.D.N.Y. 1973); *Hilo Metals Co. v. Learner Co.*, 258 F. Supp. 23 (D. Haw. 1966); and *Gen. Motors Corp. v. New York*, 501 F.2d 639, 648-52 (2d Cir. 1974))). These out-of-date cases turn on formulations of the "appearance of impropriety" standard, which is *not* at issue in Rule 1.11(c). *See Parkinson*, 857 F. Supp. 1483 ("The Utah Rules . . . dismiss the Model Code's 'appearance of impropriety' standard as 'question-begging.'").

[14] Courts recognize the value of government access to contingent fee counsel. *See, e.g.*, *Cnty. of Santa Clara v. Superior Ct.*, 50 Cal.4th 35, 58 (2010) ("'[T]he ability of the Attorney General to enter into such contractual relationships may well, in some circumstances, lead to results that will be beneficial to society – results which otherwise might not have been attainable.'" (quoting *State of R.I. v. Lead Indus. Ass'n*, 951 A.2d 428, 475 (R.I. 2008))).

*Parkinson*, 857 F. Supp. at 1476 (cautioning that such motions may be filed "for tactical reasons," to cause the "needless disruption and delay of litigation"). Indeed, the Sixth Circuit opined that OptumRx's effort to disqualify Motley Rice raised "a serious concern that its efforts to disqualify Motley Rice are merely 'disguised harassment' in order to deny Plaintiffs their chosen counsel." *In re OptumRx, Inc.*, 2024 U.S. App. LEXIS 26695, *5. As OptumRx's reading of Rule 1.11(c) does not square with the Rule's balancing of interests (or, as shown above, the plain language of its text), it must be rejected.

### D.   The *Parkinson* factors affirm that OptumRx's motion should be denied

Inasmuch as there has been no ethical violation warranting disqualification, there is no reason to evaluate the *Parkinson* factors. But even if the Court were to reach these factors, they would counsel against disqualification of Motley Rice. *First*, the alleged violation of Rule 1.11(c) – and there has been none – can hardly be characterized as egregious when every other court to have considered the issue has found no violation. *Second*, given that the documents at issue at issue are accessible to the Utah Attorney General's Office, there can be no prejudice to OptumRx; meanwhile Utah would indeed be prejudiced and suffer hardship by being deprived of the counsel it has chosen to help it hold OptumRx and the other PBMs accountable for their misconduct. *Third*, there has been no diminution of the effectiveness of counsel – the alleged conduct here (despite not creating a conflict) has no effect on Motley Rice's ability to participate fully in the ongoing litigation. *And lastly*, though the case is procedurally at an early stage, that does not outweigh Utah's interest in the choice of its counsel – particularly because OptumRx has failed to carry its burden in showing a violation of Rule 1.11(c).

### V.   Conclusion

OptumRx's motion to disqualify Motley Rice in this matter should be denied.

Dated: September 4, 2025          By: */s/ Elizabeth Smith*
                                  Elizabeth Smith (*pro hac vice*)
                                  esmith@motleyrice.com
                                  Linda Singer (*pro hac vice*)
                                  lsinger@motleyrice.com
                                  MOTLEY RICE LLC
                                  401 9th Street, Suite 630
                                  Washington, DC 20004
                                  (202) 386-9627

                                  **DEREK E. BROWN**
                                  UTAH ATTORNEY GENERAL
                                  Douglas J. Crapo (USB No. 14620)
                                  crapo@agutah.gov
                                  Deputy Attorney General
                                  Stevenson Smith (USB No. 18546)
                                  scsmith@agutah.gov
                                  Peishen Zhou (USB No. 18596)
                                  peishenzhou@agutah.gov
                                  Assistant Attorneys General
                                  Utah Office of the Attorney General
                                  160 East 300 South, 5th Floor
                                  Salt Lake City, Utah 84114
                                  (801) 366-0310

                                  *Attorneys for Plaintiffs the State of Utah and Division of Consumer Protection*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of September 2025 a copy of the foregoing was electronically filed via the Court's electronic filing system and will be sent electronically to all parties registered with the ECF system.

                                  */s/Elizabeth Smith*
                                  Elizabeth Smith