IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STATE OF UTAH and DIVISION OF CONSUMER PROTECTION,<br><br>     Plaintiffs,<br><br>v.<br><br>EXPRESS SCRIPTS, INC., EXPRESS SCRIPTS ADMINISTRATORS, LLC, ESI MAIL PHARMACY SERVICE, INC, EXPRESS SCRIPTS PHARMACY, INC., ESI MAIL ORDER PROCESSING, INC., MEDCO HEALTH SOLUTIONS, INC., UNITEDHEALTH GROUP, INC., OPTUMRX INC., OPTUMINSIGHT LIFE SCIENCES, INC., and OPTUMINSIGHT, INC.,<br><br>     Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO REMAND<br><br><br>Case No. 2:25-cv-00088-JNP-DBP<br><br>Chief District Judge Jill N. Parrish<br><br>Magistrate Judge Dustin B. Pead |

Plaintiffs the State of Utah and the Division of Consumer Protection (collectively "Utah") brought this action in Utah state court against Defendants, raising claims arising from Defendants' alleged role in causing the opioid epidemic. ECF No. 1-1 ("Compl."). Several defendants (collectively "Removing Defendants") filed a joint notice of removal, bringing the action before this court. ECF No. 1 ("Notice of Removal"). Utah now brings a motion to remand this action to

state court, arguing that this court lacks subject matter jurisdiction. ECF No. 34 ("Pls.' Mot.").[1]

For the reasons discussed below, the motion is GRANTED.

## BACKGROUND

Utah commenced this action against two groups of affiliated entities: (1) Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, ESI Mail Pharmacy Service, Inc., ESI Mail Order Processing, Inc., and Express Scripts Pharmacy, Inc. (collectively "Express Scripts"); and (2) UnitedHealth Group, Inc., OptumRx, Inc., OptumInsight, Inc., and OptumInsight Life Sciences, Inc. (collectively "Optum"). Compl. at 2.

Express Scripts and Optum are two of the largest pharmacy benefit managers ("PBMs"). *Id.* ¶ 2. PBMs "manage prescription drug benefits plans sponsored by health insurers, self-insured employers, and other payers." *Id.* ¶ 3. The First Circuit provides a helpful description of what this work, including the development of national formularies, entails:

> Think of PBMs as "middlemen" between health care plans, pharmacies, and pharmaceutical manufacturers. They contract with health plans and carriers to administer prescription drug benefits, manage drug costs, and negotiate rebates and discounts from pharmaceutical manufacturers.
>
> As relevant here, PBMs create drug formularies—lists of prescription drugs that health plans cover and to which PBMs designate tiers according to how much consumers owe for a co-payment. For example, a tier-1 drug would require a $5 co-payment, while a tier-2 drug would require a $10 co-payment, and so on. Drugs excluded from a PBM's formulary must be purchased out-of-pocket by consumers, making them a less desirable option in the marketplace.
>
> Manufacturers accordingly work to ensure that PBMs include their drugs on formularies. Among other incentives, manufacturers pay rebates—post-sale discounts calculated based on how many

---

[1] For a redacted version of this motion, see ECF No. 32.

> consumers fill a prescription for the manufacturers' drug—and other fees to PBMs, which in turn keep a portion of the rebates and fees before passing off the remainder to health insurance plans. Rebates coax PBMs to place drugs on their drug formularies in a preferred tier with a lower cost-share amount, making a drug more attractive for consumers.

*Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 180–81 (1st Cir. 2024).

Utah alleges that Defendants played a substantial role in causing the opioid epidemic, which has involved "a quadrupling of the number of prescription opioids sold annually in the United States and a tripling of the number of Utahns who died from prescription opioid overdose." Compl. ¶ 2 (bolding and italics omitted). Through creating and managing national formularies and pharmacy-benefit plans, Defendants shaped consumer access to opioids—affecting "[w]hich opioids would be available" and "[i]n what quantities," "[w]hat co-payment[s]" and other "authorization" would be required," and "[w]hat less addictive pain treatments" would be available. *Id.* ¶ 5. Defendants had extensive data and knowledge about the oversupply of opioids. *Id.* ¶¶ 6–11. But they failed to take any measures to "slow the dangerous deluge of opioid prescribing" and instead "deliberately chose to facilitate the increased sale and consumption of opioids in exchange for payments from opioid manufacturers." *Id.* ¶¶ 11–12. Utah further claims that "Defendants actively collaborated with . . . manufacturers to create, support, and propagate misleading marketing strategies to increase opioid sales." *Id.* ¶ 202.

Based on these factual allegations, Utah asserts two legal theories. First, it brings a public nuisance claim, alleging that Defendants "maintained a public nuisance though their ongoing unreasonable conduct of facilitating and encouraging the use of dangerously addictive opioids." *Id.* ¶¶ 377–410. Second, it brings a claim under the Consumer Sales Practices Act ("CSPA"), Utah Code Ann. §§ 13-11-1 to -23, alleging that Defendants engaged in prohibited "deceptive trade

practices." Compl. ¶¶ 411–23. On these grounds, Utah seeks declaratory, injunctive, and monetary relief. *Id.* at 97–98.

At the same time, Utah's complaint narrows the scope of its claims to exclude Defendants' work with the federal government. *Id.* ¶¶ 361–67. Express Scripts contracts with (1) the Department of Defense to service healthcare plans for military service members under TRICARE and (2) the Office of Personnel Management ("OPM"), albeit indirectly, to "provide[] services for federal employees enrolled in plans under" the Federal Employees Health Benefits Act of 1959 ("FEHBA"), 5 U.S.C. §§ 8901–14. Notice of Removal at ¶¶ 20–37. And Optum contracts with the U.S. Department of Veteran Affairs ("VA") to service federal healthcare plans for veterans. *Id.* ¶¶ 38–49. Utah "specifically exclude[s]" this work for federal healthcare plans from the "allegations in [its c]omplaint." Compl. ¶ 361. Other provisions go even further, excluding any "conduct *related* to the provision of any services" under contracts with federal agencies. *Id.* ¶ 364 (emphasis added). In total, there are seven paragraphs that remove conduct with a connection to the federal government from the allegations of the complaint and the relief sought, which the parties refer to collectively as the "disclaimer." *Id.* ¶¶ 361–67; Notice of Removal ¶ 4; Pls.' Mot. at 3.

Removing Defendants—which are a combination of Express Scripts and Optum entities—jointly filed a notice of removal, with the consent of the remaining defendants. Notice of Removal. They argue that removal is proper and that this court has subject matter jurisdiction "under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because [Utah] seeks to hold . . . Removing Defendants liable for actions they performed at the direction of federal officers." *Id.* ¶ 3. Specifically, they cite Express Scripts' services for TRICARE and FEHBA plans and Optum's

services for VA plans. ¶¶ 20–49. In doing so, they argue that "[Utah's] disclaimer is illusory and ineffective." *Id.* ¶¶ 62–74.

Utah brings its motion to remand to state court on the grounds that Removing Defendants have failed to establish jurisdiction under the officer removal statute. Pls.' Mot. It contends that its disclaimer is effective and, consequently, Removing Defendants fail to establish the elements for application of the officer removal statute. *Id.*; ECF No. 46 ("Pls.' Reply"). Removing Defendants continue to assert the legal theories raised in their notice of removal. ECF No. 42 ("Defs.' Mem in Opp'n"). They additionally argue that any remand order should be stayed pending appeal. *Id.* at 24–25. Utah opposes this request. Pls.' Reply at 13–16. In addition to the briefing described above and oral argument, the court also considers the parties' notices of supplemental authority that describe developments in related litigation across the country. ECF No. 93 ("Hearing Tr."); ECF Nos. 47–54, 78–80, 87–88, 92, 99–100 (notices of supplemental authority and responses).

## LEGAL STANDARD

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). This court is a "court[] of limited jurisdiction," so the removing party must establish "a statutory basis for [its] jurisdiction." *Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013) (quoting *Rural Water Dist. No. 2 v. City of Glenpool,* 698 F.3d 1270, 1274 (10th Cir. 2012)).

Here, Removing Defendants cite the federal officer removal statute as the basis for jurisdiction.[2] *See, e.g.*, Notice of Removal ¶ 3 (citing § 1442(a)(1)). This statute confers removal

---

[2] Removing Defendants cite Supreme Court precedent for the proposition that the federal officer removal statute is to be "liberally construed." Notice of Removal ¶ 13 (quoting *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007). But there is caselaw suggesting that a narrower

jurisdiction in a case "commenced in a State court" if it "is against or directed to . . . any person acting under [an] officer [of the United States] . . . for or relating to any act under color of such office." § 1442(a)(1). In *Board of County Commissioners of Boulder County v. Suncor Energy (U.S.A.) Inc.*, the Tenth Circuit articulated a three-part test for evaluating whether private defendants have made a sufficient showing to invoke the officer removal statute. 25 F.4th 1238, 1251 (10th Cir. 2022). Specifically, under *Suncor*, private defendants may only remove under § 1442(a)(1) if they show "(1) they acted under the direction of a federal officer, (2) the claim has a connection or association with government-directed conduct, and (3) they have a colorable federal defense to the claim or claims." *Id.*

The Tenth Circuit has noted, in the context of removal under § 1442(a)(1), that "the parties removing to federal court[] bear the burden of establishing jurisdiction by a preponderance of the evidence" *Id.* at 1250. It similarly has held that § 1442(a)(1) "requires a substantial factual showing to justify removal." *Wyoming v. Livingston*, 443 F.3d 1211, 1225 (10th Cir. 2006). At the same time, there is Supreme Court precedent suggesting that the court must "credit the [removing parties'] theory of the case" for at least some aspects of the jurisdictional inquiry. *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 432 (1999).

---

construction should be applied when it is invoked by private entities purportedly acting under the direction of federal officials. *See, e.g.*, *New Mexico ex rel. Balderas v. Monsanto Co.*, 454 F. Supp. 3d 1132, 1139 (D.N.M. 2020) ("While federal officer removal is read expansively in suits involving federal officials, it is read narrowly where only the liability of a private company purportedly acting at the direction of a federal officer is at issue.") (citation modified); *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1152 n.6 (D. Colo. 2002) ("Given the purpose of § 1442 and its basis in a mistrust of states and state courts to protect federal interests, I agree it should be read expansively only when the immunity of individual federal officials, and not government contractors, is at issue."). The court need not resolve this dispute because it finds that Removing Defendants have failed to make an adequate showing under even a liberal construction.

**DISCUSSION**

**I.      The Disclaimer**

Before turning to *Suncor*'s three-part test, the court first addresses the parties' arguments about the scope, validity, and efficacy of the disclaimer in Utah's complaint. In their notice of removal, Removing Defendants contend that the disclaimer "is illusory and ineffective" at preventing federal jurisdiction. *Id.* ¶¶ 62–74. While this contention ultimately turns on the three-part test applying § 1442(a)(1), it raises threshold questions implicating two specific topics: (1) the legal significance of the disclaimer under Utah law and (2) the relevance of the disclaimer to the court's jurisdictional analysis under federal law.

The court begins with a general discussion of the validity of the disclaimer under Utah law. The court first analyzes how the disclaimer would impact Utah's case if it remained in state court. Ultimately, the court concludes that the disclaimer has an expansive effect and significantly limits the scope of Utah's claims—removing Defendants' services for TRICARE, FEHBA, and VA plans from the litigation.

Next, the court addresses Removing Defendants' specific arguments regarding the disclaimer. Here, the court draws on the previous discussion of state law and also considers the extent to which federal law may limit the effect of the disclaimer. In doing so, the court considers an emerging federal "disclaimer doctrine" not directly found in statute or controlling caselaw. *See, e.g.*, *Puerto Rico*, 119 F.4th at 186–88.

Ultimately, the court rejects Removing Defendants' arguments and considers the disclaimer when applying *Suncor*'s three-part test.[3] To the extent that Removing Defendants suggest that the disclaimer is ineffective, they fail to consider Utah's expansive rights under state law as master of its complaint and the lack of any controlling authority empowering this court to brush aside Utah's litigation choices.

### A.    Significance Under State Law

The court first discusses the significance of the disclaimer under state law.[4] As it does in general when interpretating Utah state law, this court "must look to rulings of the [Utah Supreme Court], and, if no such rulings exist, must endeavor to predict how [the Utah Supreme Court]

---

[3] As discussed below, the court does so with two limited exceptions: (1) it does not rely on provisions of the disclaimer that directly turn on the applicability of a federal defense, such as a provision that disregards all conduct where a federal preemption defense applies; and (2) insofar as the disclaimer does not merely limit the scope of Utah's complaint but contains factual allegations regarding the nature of Removing Defendants' conduct that are inconsistent with the well-pled factual allegations in the notice of removal, the court relies on the allegations found in the notice of removal.

[4] Because Utah's complaint was filed in Utah state court, Utah law governs interpretive questions regarding what conduct is challenged and what legal theories are raised by this ninety-eight-page document. *See Martin v. Franklin Cap. Corp.*, 393 F.3d 1143, 1150 (10th Cir. 2004), *aff'd*, 546 U.S. 132 (2005) (noting, in the context of a different removal provision, that "state law determines the character of plaintiff's claim, and federal law determines whether that claim meets the standard [for removal]") (quoting *Just. v. Atchison, Topeka & Santa Fe Ry. Co.*, 927 F.2d 503, 504 (10th Cir. 1991)); *In re Piercy*, 21 F.4th 909, 921 (6th Cir. 2021) ("We construe [the plaintiff's] state-court complaint as provided by [state] law."). And federal courts follow the interpretive principle that disclaimers explicitly excluding conduct or legal theories from the plaintiff's claims are generally effective. *See, e.g.*, *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024) (collecting cases); *California by & through Harrison v. Express Scripts, Inc.*, 154 F.4th 1069, 1080 (9th Cir. 2025) ("To prevent a defendant from removing under the federal officer removal statute, plaintiffs may disclaim in their complaint claims that would serve as the basis for removal."). Thus, the court concludes that the complaint excludes conduct and legal theories from Utah's claims insofar as it explicitly purports to do so. This result adheres with common sense, which suggests that parties should be able to make the strategic choice to exclude specific facts and legal theories from their claims by including clear language in the complaint to that effect.

would rule." *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1221 (10th Cir. 2021) (quoting *Amparan v. Lake Powell Car Rental Companies*, 882 F.3d 943, 947 (10th Cir. 2018)).

The Utah Supreme Court has affirmed "that the plaintiff is the master of [its] complaint." *Utah Stream Access Coal. v. VR Acquisitions, LLC*, 439 P.3d 593, 601 (Utah 2019). Under this principle, state law "leave[s] it to the parties to plead claims and defenses" and state courts "are in no position to second-guess" a plaintiff's decision to litigate based on a particular legal theory. *Id.* This "notion of party control over pleading . . . is a key tenet of [Utah's] judicial system—a tenet rooted in a core premise of [Utah's] adversarial system, under which parties plead and judges judge." *Id.* Accordingly, Utah state courts have no "authority to require . . . plaintiffs to assert a broad claim for relief that they have chosen not to raise." *Id.* at 603. "Parties may limit the scope of the litigation if they choose, and if an issue is clearly withheld, the court cannot nevertheless adjudicate it and grant corresponding relief." *Combe v. Warren's Fam. Drive-Inns, Inc.*, 680 P.2d 733, 736 (Utah 1984). *See also McKinney v. Carson*, 99 P. 660, 664–65 (Utah 1909) ("It will be readily seen that a party may limit his statement of the wrongful acts or his description of injuries, or both, and, if he does so, his proof will be limited to the acts set forth or the injuries described."). These principles mean that Utah, as master of its complaint, is fully able to exclude certain conduct and relief from its claims. *Cf. Utah Stream Access Coal.*, 439 P.3d at 602–03 (affirming the right of a plaintiff to keep a specific legal theory outside the scope of litigation, even though doing so forced a lower court to address a constitutional question that otherwise would be avoided).

Utah has exercised these rights to significantly limit the scope of its claims through its disclaimer. The text of the disclaimer is broad, "specifically exclud[ing] Defendants' provision of . . . services under contracts with . . . federal agenc[ies]" from the scope of the complaint. Compl.

¶ 361. Because Removing Defendants' services for federal healthcare plans are offered pursuant to contracts with federal agencies, these services are excluded from the complaint and would be outside the scope of litigation in state court based on the plain language of the complaint.[5] *See* Notice of Removal ¶¶ 20–49. Consistent with this interpretation, Utah's counsel represented to the court at oral argument that Utah "expressly disclaim[s] any claims or relief based on [D]efendant[s'] work for [federal healthcare] plans." Hearing Tr. at 8–9. Utah's counsel also clarified that the disclaimer takes precedence over the rest of the complaint and limits the scope of Utah's claims, even if other portions of the complaint appear to implicate disclaimed conduct. *Id.*

---

[5] While this conclusion is straightforward with respect to Express Scripts' services for TRICARE plans and Optum's services for VA plans, it is less straightforward with respect to Express Scripts' services for FEHBA plans. This is because OPM does not directly contract with Express Scripts but rather with private FEHBA providers, who in turn partner with Express Scripts. *See* Notice of Removal ¶¶ 30–37. However, Express Scripts' services for FEHBA plans may still qualify as "services under contracts with . . . [OPM]" insofar as such services are specified in contracts between private providers and OPM. Compl. ¶ 361; Notice of Removal ¶ 31. And the complaint more directly excludes Express Scripts' FEHBA services by disclaiming relief for any conduct "*related* to the provision of any service under contracts with [OPM] or any other federal agency." Compl. ¶ 367 (emphasis added). Any Express Scripts conduct that services FEHBA plans, even if not directly under an OPM contract, is clearly *related* to the provision of services under contracts between OPM and FEHBA providers and thus is disclaimed by Utah.

Utah's representations to the court, in briefing and at oral argument, confirm that Utah has disclaimed any claim based on Express Scripts' FEHBA services. *See, e.g.*, Pls.' Mot. at 2 (representing that "[t]he [c]omplaint does not . . . include any claims related to the TRICARE, FEHBA, or [VA] programs or Defendants' conduct regarding these programs" and "expressly disclaim[s] and disavow[s] claims regarding Defendants' conduct related to federal programs"); Hearing Tr. at 8–9 (representing that Utah "expressly disclaim[s] any claims or relief based on [D]efedant[s'] work for [federal healthcare plans]"). *See also* Pls.' Mot. at 16–17, 19–20 (offering arguments that presuppose that Utah disclaims any conduct related to FEHBA plans). If Utah attempts to hold Express Scripts liable for its services for FEHBA plans, it likely would be barred from doing so under judicial estoppel. *See Orvis v. Johnson*, 177 P.3d 600, 602 (Utah 2008) (describing the relevant elements). In any event, neither Utah nor Removing Defendants raise any suggestion that the disclaimer applies differently to Express Scripts' FEHBA services than it does to services provided to TRICARE or VA plans.

at 9. Thus, based on the text of the disclaimer and counsel's representations as an officer of the court, Utah has exercised its authority as master of its complaint to completely exclude Defendants' conduct for federal healthcare plans from its claims. If Utah is unable to prove its case within these constraints, it will not be entitled to any relief and its claims will be dismissed.

**B.      Removing Defendants' Arguments**

Removing Defendants raise four related arguments supporting their position that Utah's "disclaimer is illusory and ineffective at eliminating federal officer removal jurisdiction." Notice of Removal ¶ 62. In evaluating these arguments, the court first considers any limitations on the disclaimer that may arise from controlling state law and then determines whether federal law places further limits on the extent to which the court can rely on the disclaimer.

**1)      Necessity**

Removing Defendants argue that Utah's "disclaimer is ineffective because it inherently contradicts the elements of [Utah's] public nuisance claim." *Id.* ¶¶ 68–71. Even if Removing Defendants are granted their premise regarding Utah's public nuisance claim for the sake of argument, the court still finds their legal position untenable. *But see* Notice of Removal ¶¶ 9–10; Pls.' Reply at 8–10 (challenging, if not directly refuting, this premise).

To begin, Removing Defendants fail to explain why the disclaimer should be ineffective under state law simply because they contend it may lead to defeat on one of Utah's claims. If Removing Defendants are right that Utah cannot prevail on its public nuisance claim if limited by its disclaimer, that simply means that Utah will, in fact, fail to meet its burden, resulting in dismissal—whether that comes as early as a motion to dismiss or as late as after trial. Utah, as master of its complaint, has every right to choose a "particular course of litigation," and if it wants to "place[] all of its eggs" in a losing legal basket, it can do so. *Utah Stream Access Coal.*, 439

P.3d at 601, 611. At oral argument, Utah's counsel confirmed that Utah is fully committed to the disclaimer and that it takes priority over the rest of the complaint, even if doing so completely forecloses Utah's right to relief. Hearing Tr. at 19. Removing Defendants raise no arguments and cite no authority suggesting that this commitment is illusory under state law. Similarly, Removing Defendants fail to explain how § 1442(a)(1), or any other federal authority, empowers this court to disregard an effective disclaimer on the grounds that it disclaims conduct necessary for Utah to prove one of its claims.

Removing Defendants invoke Fourth Circuit caselaw finding that public nuisance claims implicated government-directed conduct. *See* Notice of Removal ¶ 71 (citing *Cnty. Bd. of Arlington Cnty., Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 256–57 (4th Cir. 2021) and *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2023 WL 166006, at *5–6 (N.D. Ohio Jan. 12, 2023)). But that caselaw is easily distinguishable. These cases involved a much more modest proposition that defendants may be sued for government-directed conduct even if the government and its role are not specifically identified in the complaint. *See Arlington Cnty*, 996 F.3d at 256–57; *In re Nat'l Prescription Opiate Litig*., 2023 WL 166006, at *5. Nothing in these cases, which do not even involve disclaimers, suggests that a court should ignore an otherwise effective disclaimer simply because the disclaimer means that the claimant will lose on the merits.

While the Fourth Circuit is correct that it would "elevate form over substance" for the removal analysis to turn on whether the government is specifically mentioned in the complaint, this proposition is not implicated by a party's strategic decision to keep certain facts and legal theories outside the scope of its claims. *Arlington Cnty.*, 996 F.3d at 256. Indeed, Utah's decision to broadly disclaim federal conduct involves a wide range of considerations, which this "[c]ourt is not in the position to second-guess." *Knapp v. Janecka*, 337 F. App'x 766, 770 (10th Cir. 2009).

Thus, it appears that Utah's disclaimer can be fully effective under state law and fully considered under federal law, even if it disclaims conduct necessary to prove its public nuisance claims. Removing Defendants fail to cite any authority indicating otherwise. And in any event, this argument likely fails on the independent ground that Utah can prevail on its public nuisance claim within the parameters of its disclaimer given Utah's detailed plans for isolating the harms attributable to Removing Defendants' purely private services. *See* Pl.'s Mot. at 16–17; Pls.' Reply at 8–10.

### 2) Indivisibility

Removing Defendants next argue that the "disclaimer is illusory" because Utah "challenges indivisible federally-directed conduct" that "Removing Defendants perform or performed on an undifferentiated basis for federal and non-federal clients alike." Notice of Removal ¶ 63. In making this argument, Removing Defendants do not make any reference to state law but instead cite to federal court opinions that have supposedly applied similar reasoning. *See, e.g.*, *id.* ¶¶ 63–67 (citing *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 191–92 (1st Cir. 2024) and *California v. CaremarkPCS Health LLC*, No. 23-55597, 2024 WL 3770326, at *2 (9th Cir. Aug. 13, 2024) (Ikuta, J., concurring only in the judgment)). Here, Removing Defendants rely on their allegations that much of their conduct simultaneously serviced "federal and non-federal clients alike" in an undifferentiated manner, such as negotiations that simultaneously set rebate policies for both federal and non-federal healthcare plans. Notice of Removal ¶¶ 63–67. These allegations in the notice of removal, concerning the nature of Removing Defendants' conduct, presumably must be credited under *Jefferson County, Alabama v. Acker*. 527 U.S. 423, 424 (1999) (holding that, at least in some contexts, "[t]he [c]ourt credits the [removing defendants'] theory of the case" for the purposes of the removal analysis).

13

But the presence of hybrid conduct, which services federal and non-federal clients alike, does not create any problems for the disclaimer as a matter of state law. In explicitly disclaiming "conduct related to provision of any services . . . under [federal] contracts," Utah has disclaimed *all* conduct that provides services for federal healthcare plans. Compl. ¶ 364. Thus, any hybrid conduct that simultaneously provides services for federal healthcare plans and non-federal healthcare plans is disclaimed by Utah and outside the scope of the litigation. Removing Defendants do not explain why Utah cannot exercise its broad rights as master of its complaint accordingly. And the court has every reason to believe that Utah state courts can apply a disclaimer that implicates hybrid conduct, and Removing Defendants offer no arguments or authority suggesting otherwise.

Federal courts in other circuits have "reject[ed] disclaimers that . . . disavow any attempt to recover based on the defendant's indivisible federal conduct."[6] *See Ohio ex rel. Yost v. Ascent Health Servs., LLC*, 165 F.4th 999, 1008 (6th Cir. 2026); *Puerto Rico*, 119 F.4th at 189, 191–92; *California*, 2024 WL 3770326, at *2.; *Mississippi v. Optum, Inc.*, No. 3:24-CV-718-KHJ-MTP, 2025 WL 1622390, at *3 (S.D. Miss. June 9, 2025). But the court is doubtful that these cases stand for the implausible principle that a disclaimer should be ignored in a § 1442(a)(1) analysis whenever it disclaims hybrid conduct. And to the extent that they do adopt this principle, they offer no compelling for such a result.[7]

---

[6] But these cases are not particularly clear whether this reasoning derives from state or federal law.

[7] For example, even if the Sixth Circuit opinion is read as adopting the principle, the justification that it offers applies to disclaimers whose "applicability . . . turns on whether the defendant's actions are in fact related to conduct undertaken under color of federal officer." *Ohio*, 165 F.4th at 1008. The mere fact that Utah's disclaimer involves hybrid conduct does not implicate this concern.

14

The court's conclusion is buttressed by Removing Defendants' own representations that their bundling of federal and non-federal services is a deliberate choice, in no way mandated by the government. *See, e.g.*, Hearing Tr. at 54 ("[I]t it is true that there is no federal direction for the rebate negotiations to happen jointly."). *See also* Notice of Removal (failing to raise any allegations suggesting otherwise). It strains credulity for Removing Defendant to suggest that overlapping services render Utah's disclaimer ineffective when the overlap in question was the result of their own, non-federally directed business decisions. Indeed, if Removing Defendants are to be believed, Congress has opened the floodgates for federal contractors to manufacture federal removal jurisdiction for their whole line of business by strategically packaging federal and non-federal services together. A statute designed to protect "the very basic interest in the enforcement of federal law through federal officials" surely does not reach so far. *Willingham v. Morgan*, 395 U.S. 402, 406 (1969).

In short, the court is unconvinced by Removing Defendants' indivisibility argument, regardless of whether it is construed in terms of state or federal law.

### 3)    Statutory Purpose

Removing Defendants next argue, based on the purpose of § 1442(a)(1), that "the disclaimer is ineffective because it would force the Removing Defendants to prove federal direction and federal defenses in state court." Notice of Removal ¶ 72. They reason that the court should disregard the disclaimer because otherwise Utah would be able to circumvent the statute's purpose of providing a federal forum for defendants to litigate the scope of their federal work. *Id.* This argument, which invokes federal law, suggests that the disclaimer should be disregarded in the court's § 1442(a)(1) analysis even if it succeeds in narrowing the scope of Utah's litigation in state court.

A hypothetical version of this argument is quite plausible. One could imagine a plaintiff trying to employ the following disclaimer: *The plaintiff disclaims any conduct that implicates a federal defense*. This hypothetical disclaimer, in some sense, forecloses the possibility that a removing defendant would have a colorable federal defense—after all, any conduct that would support such a defense is disclaimed—and may imply that there is no removal jurisdiction under § 1442(a)(1). But this result likely would be anomalous. *See Ohio ex rel. Yost v. Ascent Health Servs., LLC*, 165 F.4th 999, 1008 (6th Cir. 2026) (invoking a similar hypothetical). Insofar as Congress crafted § 1442(a)(1) to enable defendants with a connection to the federal government to litigate federal defenses in federal court, a valid disclaimer should not defeat removal when its applicability turns on the very federal defenses for which Congress wanted to provide a federal forum. *See Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187–88 (1st Cir. 2024). Thus, federal courts may need to disregard certain disclaimers to effectuate the purpose of § 1442(a)(1) and ensure that they do not foreclose removal in a manner that is antithetical to the statutory purpose.

But that is not the situation here. Consider, for example, the provision of Utah's disclaimer that excludes Removing Defendants' provision of services under federal contracts. Compl. ¶ 362. Allowing this specific provision to defeat removal is not inconsistent with congressional intent. To be sure, applying this disclaimer may require state courts to adjudicate questions about which work was performed for federal healthcare plans. *See* Notice of Removal ¶ 72. But there is no indication that Congress intended to guarantee a federal forum for such questions. As a matter of logic and common sense, Congress may intend to provide federal contractors with a federal forum to litigate the merits of federal contracts defenses without simultaneously intending to guarantee a federal forum whenever a case implicates a factual question about a federal contract. Especially

16

with respect to relatively straightforward and possibly even uncontested factual questions regarding the scope of services provided under federal contracts, there is no need to guarantee a federal forum. Thus, any purposive analysis must consider the specific questions implicated by the disclaimer and whether Congress intended to guarantee a federal forum for those questions.

In carrying out this purposive inquiry, the Supreme Court's opinion in *Jefferson County* is instructive. There, removing defendants sought to remove a tax collection case under an earlier version of § 1442(a)(1) on the grounds that they were taxed for engaging in their occupation as federal judges. *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 427, 432 (1999). The United States argued that removal was improper because the relevant ordinance only taxed the judges for their personal conduct. *Id.* at 432. Rather than requiring the judges to provide "an airtight case on the merits" with respect to their interpretation of the ordinance, the Supreme Court "credit[ed] the judges' theory of the case for purposes of . . . [the] jurisdictional inquiry." *Id.* The Supreme Court justified its approach because doing otherwise "would defeat the purpose of the removal statute." *Id.* However, in offering its justification, it emphasized that deciding between the conflicting interpretations of the ordinance at issue would "decide the merits of th[e] case." *Id.* This suggests that Congress intended to provide a federal forum for federal questions that go to the heart of what is disputed in the underlying litigation. *Cf. Puerto Rico*, 119 F.4th at 189 ("[F]ederal officers should have the opportunity to present their version of the facts on *disputes at the heart of their federal service* to a federal court.") (citation modified) (emphasis added). In contrast, Congress more readily permits other questions—which are not directly bound up with the underlying controversy—to be litigated in state court, even if they somewhat implicate federal law.

Thus, the court finds Removing Defendants' purposive argument unconvincing. The removal statute may require disregarding portions of the disclaimer that go to the heart of

Removing Defendants' federal defenses, such as the paragraph disclaiming conduct "to the extent preempted by federal law."[8] Compl. ¶ 362. But there appears to be nothing similarly troubling if other provisions of the disclaimer foreclose removal. Consider again the provision that disclaims "services under contracts with . . . federal agenc[ies]." *Id.* ¶ 361. While this provision turns on questions about the scope of federal contracts, Removing Defendants have not established that these questions effectively "decide the merits of th[e] case" and thus demand a federal forum according to § 1442(a)(1). *Jefferson Cnty.*, 527 U.S. at 432. Accordingly, it appears that the court can consider this provision—and other provisions that similarly turn on relatively narrow questions about which specific conduct serviced which clients—without offending congressional intent. *Cf. Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*, No. 1:21-CV-29, 2021 WL 5194662, at *8 (S.D. Ohio Nov. 8, 2021) (considering a provision of a disclaimer in its § 1442(a)(1) analysis because it turned on "a discrete and readily identifiable category").

In arguing that congressional purpose requires more broadly disregarding the disclaimer, Removing Defendnats cite *Willingham v. Morgan*. 395 U.S. 402 (1969); Defs.' Notice of Removal ¶ 72 (citing *Willingham*, 395 U.S. at 409). But the court finds *Willingham* inapt for several reasons. First, *Willingham* addressed only how "color of office" and "colorable federal defense" should be interpreted in the officer removal statute. *Willingham*, 395 U.S. at 404–10. Neither of these holdings occurred in the context of or even addressed plaintiffs attempting to narrow the scope of their claims. Second, *Willingham*'s purposive reasoning may be relatively narrow. To be sure, there

---

[8] To be clear, the court is not holding that § 1442(a)(1) in fact requires the court to disregard these provisions in its jurisdictional analysis. *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) ("[T]he text of a law controls over purported legislative intentions unmoored from any statutory text."). But the court assumes without deciding that these provisions should be disregarded because it finds that Removing Defendants have still failed to justify removal even absent these provisions.

is the following language in the opinion that may appear to support Removing Defendants' position:

> If the question raised is whether [the federal officers] were engaged in some kind of 'frolic of their own' in relation to [the plaintiff], then they should have the opportunity to present their version of the facts to a federal, not a state, court. This is exactly what the removal statute was designed to accomplish.

*Id.* at 409. But this passage is immediately preceded by a discussion of the specific facts of the case, stating it was "undisputed" that the relationship between the officers and the plaintiff "derived solely from their official duties" and the officers "were on duty, at their place of federal employment, at all the relevant times." *Id. Willingham* thus may stand for the narrow principle that the officer removal statute was designed to provide a federal forum for federal officers to rebut charges that they engaged in an aberrant frolic when otherwise they clearly would be acting pursuant to their official duties. Thus, it is far from clear that *Willingham*'s purposive reasoning is implicated when state courts are being asked to make relatively straightforward determinations about which conduct serviced federal clients and contracts. And *Willingham*'s purposive reasoning relied on the "the very basic interest in the enforcement of federal law through federal officials," which derives from the fact that the federal government must act through its officers and agents. *Id.* at 406. It is questionable that this reasoning justifies removal here, where Removing Defendants as private entities have a much more attenuated relationship with the federal government.

In rejecting the Removing Defendants' purposive argument, the court's analysis is also informed by weighty "considerations of comity" that warn against "snatch[ing] cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 21 n.22 (1983). This principle cautions against an expansive interpretation of § 1442(a)(1) that goes

19

beyond what has been previously recognized by the Tenth Circuit and the Supreme Court. While other federal courts may have employed more expansive interpretations, the court is insufficiently persuaded by their reasoning. *See, e.g.*, *Puerto Rico*, 119 F.4th at 187–88; *Ohio*, 165 F.4th at 1008–09. Some courts appear to have analogized too quickly from egregious disclaimers that force defendants to prove an entire federal defense in state court to less concerning disclaimers that implicate narrower and less controversial questions. *See Ohio*, 165 F.4th at 1008–09. Other courts appear to have overstated the implications of *Willingham* and have failed to discuss the various factors that may render it inapplicable. *See, e.g.*, *Puerto Rico*, 119 F.4th at 187–88.

Regardless, this court—mindful of its limited constitutional and statutory role—is unable to identify any federal authority that adequately supports Removing Defendants' purposive argument. Even if § 1442(a)(1) requires disregarding disclaimers that function as egregious end runs around the statute, Removing Defendants fail to explain why a similar result is appropriate here where the disclaimer at issues implicates narrower and possibly even undisputed questions about which conduct serviced specific clients. In sum, the court is unpersuaded that the purpose of § 1442(a)(1) requires broadly disregarding the disclaimer.

### 4) *Jefferson County* Deference

In arguing that the disclaimer is "ineffective at severing the connection between [Utah's] claims and . . . Removing Defendants' work for the federal government," Removing Defendants emphasize that "this [c]ourt must, for purposes of federal officer removal, 'credit' the Removing Defendants' 'theory of the case.'" Notice of Removal ¶¶ 54, 73 (quoting *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 432 (1999)). This principle, articulated by the Supreme Court in *Jefferson County*, is relevant to the court's analysis, but its precise scope is less clear.

In *Jefferson County*, the Supreme Court noted the need to "credit the [removing defendants'] theory of the case" for the purposes of the "jurisdictional inquiry."[9] *Jefferson Cnty.*, 527 U.S. at 432. In doing so, the Court deferred to the position advanced by the removing defendants that they were taxed on the basis of their federal office. *Id.* But the Court did not provide any specific guidance as to (1) what positions should receive deference and (2) how strong the deference should be. Neither Removing Defendants nor Utah provide any binding caselaw as further guidance on these questions.

According to the Fourth Circuit's interpretation, *Jefferson County* stands for the principle that the court should "look to a defendant's well-pleaded facts of removal" for its jurisdictional analysis. *W. Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 195 (4th Cir. 2025) (quoting *Maryland v. 3M Co.*, 130 F.4th 380, 389 (4th Cir. 2025)). Under this approach, the court "cannot blindly accept [Utah's] theory of charged conduct and [its] connection to [Removing Defendants'] federal work" but instead must consider the well-plead[ed] facts in the notice of removal. *3M Co.*, 130 F.4th at 389. At oral argument, Removing Defendants' counsel appeared to support this interpretation, suggesting that the "notice of removal is treated like a complaint" and only requires factual support insofar as Utah submits its own evidence challenging removal jurisdiction. Hearing Tr. at 31–32. *Cf. Dart Cherokee Basin Operating Co., LLC v. Owens*, 574

---

[9] Specifically, the Court held that removing defendants' theory of the case should be credited for the purposes of (1) establishing a colorable federal defense and (2) establishing the required causal connection between plaintiff's claims and the removing defendants' federal conduct, which at the time were the two elements for officer removal. *Jefferson Cnty.*, 527 U.S. at 432. In the intervening years, the officer removal statute has been amended and the relevant elements have changed, creating even more uncertainty as to how *Jefferson County* should apply here.

U.S. 81, 87 (2014) (finding that the general requirements for notices of removal under 28 U.S.C. § 1446(a) mirror the pleading requirements for plaintiffs under FED. R. CIV. P. 8(a)).

Under this interpretation, the court should not rely on Utah's factual allegations regarding the relationship between Removing Defendants' conduct and the federal government and instead should base its analysis on the well-pled allegations in the notice of removal. Accordingly, the court credits Removing Defendants' well-pled allegations that they conducted "rebate negotiations" that simultaneously set rebate rates for "federal and non-federal plans alike," even though Removing Defendants make no suggestion that these joint rebate negations were mandated by the federal government and their allegations and representations in fact suggest otherwise. *See* Notice of Removal ¶¶ 11, 34, 63 n.2; Hearing Tr. at 54. In any event, these allegations simply establish that some of Removing Defendants' conduct had a hybrid status and do not suggest that the disclaimer is ineffective under state law or should be disregarded under federal law. To the contrary, the disclaimer applies to all hybrid conduct given its plain language. While the notice of removal alleges that the "disclaimer is illusory and ineffective," such allegations are conclusory and therefore "are not entitled to the assumption of truth." Notice of Removal ¶ 62; *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009) (noting that conclusory allegations should be disregarded for the purposes of a FED. R. CIV. P. 12(b)(6) analysis). Removing Defendants do not raise any arguments suggesting otherwise, and the court is unaware of any federal courts relying on similarly conclusory allegations to justify removal.

To be sure, *Jefferson County* itself may suggest that Removing Defendants' interpretation of the disclaimer is entitled to some deference in the same way that the Supreme Court credited the *Jefferson County* defendants' interpretation of a state ordinance. *Jefferson Cnty.*, 527 U.S. at 432. But the court is unconvinced that this *Jefferson County* deference changes the court's

conclusions. Importantly, the *Jefferson County* Court held only that the removing defendants did not need to present "an airtight" argument for their legal position. *Id. Jefferson County* thus does not stand for the implausible position that this court should simply defer to Removing Defendants' legal position, no matter how unsupported or inconsistent with authority it may be. Here, Removing Defendants' characterizations of the disclaimer are unpersuasive. While they suggest that the disclaimer is ineffective because it challenges indivisible conduct and disclaims conduct necessary to the public nuisance claim, they do not cite any state law that supports their conclusion. Rather, state law affirms Utah's broad rights as master of its complaint to remove conduct related to federal healthcare plans from its claims for relief.

*       *       *

In short, the court is ultimately unconvinced by Removing Defendants' arguments that the disclaimer is invalid or should be disregarded for purposes of the court's jurisdictional analysis. Pursuant to its rights as master of its complaint under state law, Utah has committed to broadly exclude Removing Defendants' work for federal healthcare plans from its claims. The choice has already been made, and the court need not pretend otherwise.

## II.    Requirements for Federal Officer Removal

The court next considers whether Removing Defendants have met their burden in establishing *Suncor*'s requirements for federal officer removal, which requires a showing that "(1) they acted under the direction of a federal officer, (2) the claim has a connection or association with government-directed conduct, and (3) they have a colorable federal defense to the claim or claims." *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1251 (10th Cir. 2022). With respect to the first prong, Removing Defendants assert three ways in which they acted under a federal officer: Express Scripts' services for TRICARE plans

23

under the direction of the Department of Defense, Express Scripts' services for FEHBA plans under the direction of OPM, and Optum's services to VA healthcare plans under the direction of the VA. Notice of Removal ¶¶ 17–49. These assertions are questionable and, to some extent, are undermined by the Removing Defendants' own representation that they voluntarily chose to bundle federal and non-federal services together with no requirement to do so from the federal government. *See, e.g.*, Hearing Tr. at 54 ("[I]t it is true that there is no federal direction for the rebate negotiations to happen jointly."). But even if Removing Defendants are granted their broad interpretation of government-directed conduct for the sake of argument, they have simply failed to make any showing with respect to the two other *Suncor* requirements; they neither have established that Utah's claims are connected or associated with the government-directed conduct nor have they asserted a colorable federal defense.

### A.  A Connection or Association with Government-Directed Conduct

The second prong of *Suncor* requires the removing party to demonstrate that a claim against it "has a connection or association with government-directed conduct." *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1251 (10th Cir. 2022). This requirement reflects relatively recent amendments to the officer removal standard that replaced a stricter causal requirement in the previous version of the statute. *See, e.g.*, *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017). In determining whether this requirement has been established, the court proceeds with minimal available guidance from authoritative caselaw. *See, e.g.*, *Suncor*, 25 F.4th at 1250–54 (deciding based on a lack of federally directed conduct, without any need to reach this requirement); *Doe v. Integris Health, Inc.*, 123 F.4th 1189, 1193–97 (10th Cir. 2024) (same).

To establish the required connection between Utah's claims and federally directed conduct, Removing Defendants argue that Utah's claims create liability for their work servicing TRICARE, FEHBA, and VA healthcare plans. They argue that Utah's complaint "implicate[s] [Removing] Defendants' work for federal clients" and suggest that Utah's "allegations encompass services [Removing] Defendants provided to federal health plans." Defs.' Mem in Opp'n at 11–12. Similarly, they allege that Utah's claims about an oversupply of opioids "necessarily include the thousands of prescription opioids dispensed to members" of federal healthcare plans. Notice of Removal ¶ 56; Defs.' Mem in Opp'n at 13, 19. But, as already discussed, Utah's disclaimer effectively excludes any conduct servicing federal healthcare plans from the scope of the complaint. *See, e.g.*, Compl. ¶ 364 (declaring that the complaint "does not challenge . . . Defendants' conduct related to the provision of any services . . . under contracts with . . . federal agenc[ies]"). Given this broad disclaimer, Utah's claims do not implicate Removing Defendants' conduct servicing TRICARE, FEHBA, or VA healthcare plans. Consequently, the connection that Removing Defendants identify between Utah's claims and federally directed conduct is illusory. Because the burden of establishing a viable connection is on Removing Defendants and they have not done so, they fail to meet their burden.

**B.    Colorable Federal Defense**

The third prong of *Succor* requires Removing Defendants to show that "they have a colorable federal defense to the claim or claims." *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1251 (10th Cir. 2022). In construing this requirement, the Supreme Court has "rejected a 'narrow, grudging interpretation' of the statute, recognizing that 'one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.'" *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999)

25

(quoting *Willingham v. Morgan*. 395 U.S. 402, 407 (1969)). At the same time, even "a liberal construction . . . can find limits in a text's language, context, history, and purposes." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007). Accordingly, asserting a completely frivolous or speculative federal defense is insufficient to justify removal. *See, e.g.*, *New Mexico ex rel. Balderas v. Monsanto Co.*, 454 F. Supp. 3d 1132, 1144–46 (D.N.M. 2020) (finding asserted defenses insufficient).

Removing Defendants purport to have two colorable federal defenses: (1) a government contract defense and (2) a preemption defense. Notice of Removal ¶¶ 76–88; Defs.' Mem in Opp'n at 23–24. But given the broad nature of the disclaimer, neither of these defenses apply to Utah's claims and thus are not colorable. *Cf. Kelleher v. A.W. Chesterton Co.*, No. 15-CV-893-SMY-SCW, 2015 U.S. Dist. LEXIS 159783, at *11 (S.D. Ill. Nov. 23, 2015) (finding that the plaintiff's "waiver ha[d] rendered any federal defenses moot" and that "deny[ing] remand . . . would affirm [the plaintiff's] right to assert a defense against a claim that does not exist").

The government contract defense is predicated on the assumption that Removing Defendants cannot simultaneously comply with the asserted state law duties and their contractual obligations to the federal government. Notice of Removal ¶¶ 77–82. *See also Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 210 (4th Cir. 2016) ("The [government contractor] defense only applies if a contractor's obligations to the government conflict with state law such that the contractor may not comply with both."); *Boyle v. United Techs. Corp.*, 487 U.S. 500, 508–09 (1988). But any decision on the part of Removing Defendants to jointly service federal and non-federal clients with the same conduct, such as joint rebate negotiations, was not mandated by their federal contracts. Accordingly, Removing Defendants could have serviced federal healthcare plans in whatever way specified by the federal government while also fully complying with state law

26

when servicing non-federal plans by providing separate services. Removing Defendants may have extracted commercial benefit from bundling their services, but such bundling was not required by their federal contracts and therefore fails to justify illegality arising from their work for non-federal clients. In any event, Utah, as master of its complaint, explicitly excludes conduct servicing federal contracts from its allegations. Consequently, Removing Defendants fail to allege how any of the asserted state law duties—which pertain only to conduct that is exclusively for non-federal healthcare plans and non-federal clients—conflict with their contractual obligations to the federal government. *See* Notice of Removal ¶¶ 77–82 (focusing exclusively on claims supposedly challenging their conduct for federal healthcare plans); Defs.' Mem in Opp'n at 23–24. In short, the government contract defense appears limited to defending Removing Defendants' provision of services under federal contracts, which is simply not at issue in the litigation.

The preemption defense faces similar problems. Removing Defendants argue that the statutes and regulations implementing TRICARE preempt any state law liability for their conduct implementing TRICARE. Notice of Removal ¶¶ 84–86. But they do not explain how this defense is applicable since Utah does not present any claim arising from conduct servicing TRICARE plans. Likewise, Removing Defendants argue that Express Scripts has a preemption defense under FEHBA because "[i]t contains an express provision displacing any state laws relating to coverage or benefits afforded to FEHBA plans." *Id.* ¶¶ 87–88. However, Utah does not challenge any services connected to FEHBA plans.

In summary, Removing Defendants' federal defenses are simply not implicated in the lawsuit given Utah's disclaimer. They have, therefore, failed to meet their burden of establishing a colorable federal defense.

**III.    Stay**

Finally, the court addresses Removing Defendants' two requests to stay the execution of the court's remand order. Specifically, Removing Defendants seek (1) an initial 30-day stay under Federal Rule of Civil Procedure 62(a); and (2) a longer stay pending appeal, which would go into effect after they file a notice of appeal. Defs.' Mem. in Opp'n at 24–25.

The court begins with the first request, which does not require any affirmative action from the court. Under Rule 62(a), the "execution on a judgment and proceedings to enforce it are [automatically] stayed for 30 days after its entry" in the ordinary course of affairs. Fed. R. Civ. P. 62(a). Because the court's order to remand is appealable under 28 U.S.C. § 1447(d), it counts as judgment under Federal Rule of Civil Procedure 54(a) and thus is within the ambit of Rule 62(a). *See, e.g.*, *Kansas v. Pfizer, Inc.*, No. 24-1128-DDC-BGS, 2025 WL 1548507, at *1 (D. Kan. May 30, 2025) (reaching the same conclusion). To be sure, Rule 62(a) gives the court discretion to "order[] otherwise" and take affirmative steps to prevent an automatic stay from going into effect. Fed. R. Civ. P. 62(a). But the court has received no request from Utah to issue such an order. *See* Pls.' Reply at 13 (noting that the court retains discretion to prevent a Rule 62(a) stay but making no request for the court to exercise its discretion accordingly).

Going much further, Removing Defendants argue that once they file a notice of appeal, the court will be required to stay its remand order pending the appeal. Defs.' Mem. in Opp'n at 24–25. But as a general matter, this kind of requested "stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). Instead, the decision to stay is normally an "exercise of judicial discretion . . . dependent upon the circumstances of the particular case." *Id.* (quoting *Virginian Ry. Co.*, 272 U.S. at 672–73). Unlike a Rule 62(a) stay, which goes into effect

automatically by default, the party seeking a discretionary stay from the court "bears the burden of showing that the circumstances justify an exercise of that discretion" based on

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). This test is meant to accommodate several competing considerations. On the one hand, a stay pending appeal can be "a means of ensuring that appellate courts can responsibly fulfill their role in the judicial process," allowing them to act deliberately without turning appellate review into an "idle ceremony" that comes too late to make a meaningful difference. *Id.* at 427 (citation modified). On the other hand, a stay "is an intrusion into the ordinary processes of administration and judicial review" and interferes with the public's right "to the prompt execution of orders that the legislature has made final." *Id.*

Removing Defendants do not try to meet their burden under this general framework but instead suggest that they are entitled to a non-discretionary stay pending appeal given *Coinbase, Inc. v. Bielski*. 599 U.S. 736 (2023).[10] Defs.' Mem. in Opp'n at 24–25. In *Coinbase*, the Supreme Court held that a statute creating a right to appeal an order denying a motion to compel arbitration creates a corresponding right to a non-discretionary stay pending appeal. 599 U.S. at 738. Removing Defendants argue that appealable remand orders are similarly subject to a non-discretionary stay because of *Coinbase*. Defs.' Mem. in Opp'n at 24–25. One circuit court has

---

[10] In response to the court's questioning at oral argument, Removing Defendants' counsel suggested that Removing Defendants would be entitled to a discretionary stay. Hearing Tr. at 63–64. But this cursory response is not an adequate showing for discretionary relief under *Nken*.

adopted this interpretation of *Coinbase*. *See City of Martinsville, Virginia v. Express Scripts, Inc.*, 128 F.4th 265, 268–72 (4th Cir. 2025).

But more circuit courts have ruled otherwise, holding that appealable remand orders are subject only to a discretionary stay, notwithstanding *Coinbase*. *See California by & through Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 773 (9th Cir. 2025), *cert. denied sub nom. Express Scripts, Inc. v. California*, No. 25-327, 2026 WL 79931 (U.S. Jan. 12, 2026); *Georgia v. Clark*, No. 23-13368, 2023 U.S. App. LEXIS 34018, at *2 (11th Cir. Dec. 21, 2023); *Cty. of Westchester v. Express Scripts, Inc.*, No. 24-1639 (L), 2024 LX 215939, at *1 (2d Cir. Sep. 6, 2024); *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 184 n.3 (1st Cir. 2024) (referencing an unpublished order denying a stay). *See also Martinsville*, 128 F.4th at 272–75 (Wynn, J., dissenting) (disagreeing with his colleague's expansive interpretation of *Coinbase*). The court finds these opinions adopting a narrower interpretation of *Coinbase* more persuasive, especially given the many ways in which *Coinbase*'s reasoning relied on factors unique to arbitration and the federalism concerns implicated by stays in the remand context. *See, e.g.*, *California*, 139 F.4th at 768–70.

Therefore, having concluded that *Coinbase* does not extend to the present context and that Removing Defendants have failed to meet their burden under *Nken*, the court denies the request to stay its remand order pending appeal beyond the 30 days provided under Rule 62(a) of the Federal Rules of Civil Procedure.

## CONCLUSION AND ORDER

For the reasons above, the court GRANTS Utah's motion to remand and ORDERS this action remanded to the District Court of the Third Judicial District in and for Summit County,

Utah. Because the court does not order otherwise, any execution on this remand order is automatically stayed for 30 days under Federal Rule of Civil Procedure 62(a).

DATED March 31, 2026

BY THE COURT

Jill N. Parrish
United States District Court Judge